967 P.2d 265

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Dana Michael Alika OPUPELE, Defendant–Appellant.**

**No. 21230**

Supreme Court of Hawai'i.

Nov. 13, 1998.

Philip H. Lowenthal and Graham Daniel Mottola of Lowenthal & August, on the briefs, Wailuku, for defendant-appellant.

Simone C. Polak, Deputy Prosecuting Attorney, Kahului, Kimberly A. Bal, Law Clerk Assisting on the brief, for plaintiff-appellee.

MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellant Dana Michael Alika Opupele appeals his judgment of conviction of one count of promoting a dangerous drug in the first degree and one count of prohibited acts related to drug paraphernalia. On appeal, Opupele claims that the circuit court erred by: (1) denying his motion to suppress evidence discovered as a result of the execution of an invalid anticipatory search warrant; (2) concluding that the prosecution did not waive the confidential informer privilege; (3) concluding that the execution of the search warrant by the police did not violate the "knock and announce" rule; (4) failing to determine whether the confidential informant was a necessary witness pursuant to Hawai'i Rules of Evidence (HRE) Rule 510(c)(2); (5) failing to dismiss the case due to prosecutorial misconduct in neglecting to disclose requested evidence and subsequently using this evidence to impeach Opupele's testimony; (6) refusing to give the jury a requested instruction on the defense of possession for the purpose of abandonment, disposal, or reporting to the police; and (7) convicting Opupele of both counts after the jury, by special interrogatory, determined that the possession and paraphernalia charges had merged into a continuing course of conduct.

We reject all of Opupele's points of error except the fourth point. The trial court failed to follow the procedures mandated by HRE Rule 510 to determine whether the prosecution should have been ordered to produce the confidential informant as a necessary witness. Therefore, we vacate and remand Opupele's conviction for further proceedings.

## I. BACKGROUND

On the morning of February 10, 1997, Officer Clarence Kenui of the Maui Police Department presented an affidavit in support of an application for a search warrant to a

district court judge. This affidavit averred that Officer Kenui had learned from a confidential informant (CI) that Opupele and another male, Theodore Adriano, were involved in bringing large quantities of cocaine to Maui. The affidavit specifically averred that Adriano was flying into Maui at 11:20 a.m. on February 10, 1997 with a quantity of cocaine which he was thereafter going to deliver to Opupele at a residence on Akai Street. Officer Kenui had verified that Adriano was a passenger on a flight scheduled to arrive in Maui that morning. At 11:30 a.m., a search warrant authorizing a search of the Akai Street address was issued. The search warrant stated, in part, that "Affiant has reason to believe that within the above-described premises there is presently being concealed the following items: 1. An unascertainable amount of cocaine."

At approximately 5:00 p.m. on February 10, 1997, Adriano drove up to the Akai Street residence. Opupele came out of the house and Adriano handed him a carry-on type luggage bag. Adriano then left and Opupele went inside the house. Approximately two minutes later, the police officers executed the search warrant. Upon execution of the warrant, the officers found the opened bag on the bathroom counter. The bag contained approximately three pounds of cocaine in two plastic-wrapped packages. No other drugs or drug paraphernalia were recovered from the residence.

On February 13, 1997, Opupele was charged by complaint with one count of promoting a dangerous drug in the first degree in violation of HRS § 712–1241(1)(a)(i) (1993)[1] and one count of prohibited acts related to drug paraphernalia in violation of HRS § 329–43.5(a) (1993).[2] On February 26,

1997, Opupele filed a written request for disclosure requesting a copy of the search warrant and underlying affidavit. On March 18, 1997, the prosecution provided Opupele with a redacted version of the affidavit. The prosecution informed Opupele that it was invoking the privilege to protect the identity of an informer pursuant to HRE Rule 510.

On April 2, 1997, Opupele filed a motion to suppress the evidence seized as a result of the execution of the search warrant because of an alleged violation of the "knock and announce" requirement.[3] On April 9, 1997, Opupele filed a supplemental memorandum in support of the motion to suppress, in which he argued that the redacted version of the affidavit provided to him contained insufficient facts to establish probable cause to issue the warrant. On May 6, 1997, the prosecution provided Opupele with an amended affidavit, which redacted a lesser portion of the information but did not contain any information identifying the confidential informant.

On May 7, 1997, the circuit court held a hearing on the motion to suppress. At the start of the hearing, Opupele represented to the court that the issue of probable cause to issue the warrant was "not quite ripe" for decision because Opupele was reviewing the amended affidavit and was awaiting police reports on the execution of the search warrant. The prosecution argued that the issue of probable cause was a legal issue and that the court could review the unredacted version of the affidavit *in camera* and render a decision without delay. The court decided to "take the ... knock and announce issue today, and save [the probable cause issue] for later hearing."[4] The court ruled that the

---

**1.** This statute provides, in pertinent part, that:

A person commits the offense of promoting a dangerous drug in the first degree if the person knowingly: (a) Possesses one or more ... substances of an aggregate weight of: (i) One ounce or more, containing ... cocaine[.]

**2.** This statute provides, in pertinent part, that:

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to ... pack, repack, store, contain ... or otherwise introduce into the human body a controlled substance in violation of this chapter.

**3.** HRS § 803–37 (1993) provides, in pertinent part, that, "[i]f the doors [to the building to be searched] are shut[,] the officer must declare the officer's office and the officer's business and demand entrance" before opening or breaking the closed door and entering the building. This is the statutory codification of the "knock and announce" rule, previously a common-law requirement.

**4.** The record indicates that no further hearing on Opupele's motion to suppress was ever held and that the circuit court did not issue a written

police officer's actions did not violate the knock and announce rule and denied Opupele's motion to suppress on this ground.

On June 25, 1997, Opupele filed a motion for discovery and inspection, seeking, *inter alia*, disclosure of the identity of the confidential informant and an unredacted copy of the affidavit in support of the search warrant. This motion also sought "[a]ll police reports, notes, memoranda, or writings which involve or mention Theodore Adriano, relative to this case." The prosecution opposed the motion, claiming a privilege to keep the identity of the informer confidential pursuant to HRE Rule 510. The motion was heard on July 24, 1997. At the hearing, the prosecution represented that it did not have any writings concerning Adriano. The court ordered the prosecution "to put in writing that there is nothing regarding Mr. Adriano regarding this case that the State has in its possession."[5] With respect to the confidential informant privilege, the court ordered the prosecution to submit an unredacted version of the affidavit under seal for *in camera* review. The court orally stated that it would

> have the State submit their unredacted affidavit and then just go through it one more time, and if there's nothing more to be redacted, then leave it as is. If there is something that should be unredacted, then I'll ... provide it to both counsel. But as far as I'm concerned under Rule 510 that's as much as I intend to do at this point.

The court did not make any further ruling on Opupele's motion for discovery.

The case proceeded to jury trial on October 14 and 15, 1997. The prosecution presented testimony from Officer Kenui and Officer Rickard as to the events surrounding the execution of the search warrant and the recovery of the cocaine and plastic wrappings. Opupele presented testimony from Daniel Gaspar, who witnessed Adriano's de-

livery of a bag to Opupele from across the street. Gaspar testified that, about a minute and a half to two minutes later, the police pulled up in a van and entered the house.[6]

Opupele testified. He related that Adriano telephoned him to return a borrowed carry-on bag. When Adriano returned the bag, he felt that there was a weighty object inside. He brought the bag into the house, and, upon opening it, discovered the drugs inside. Before he could take any action regarding the drugs, the police entered the house and arrested him. Opupele was asked, "Did you have time to make any kind of a plan as to what you were going to do with this dope?" He answered, "No." He further testified that he did not even have time to determine if the item in the bag was, in fact, cocaine. On cross-examination, the prosecution asked Opupele about his relationship with Adriano. The following exchange ensued:

> [Prosecuting attorney (PA)]Q. Mr. Opupele, you stated this [Adriano] was a fishing buddy of yours; is that correct?
>
> [Opupele] A. Yes.
>
> Q. Do you also socialize with him beyond fishing?
>
> A. We just do fishing.
>
> . . .
>
> Q. Isn't it true, sir, that in [sic] December 13th, 1996, you went with him to San Francisco?
>
> A. December 1996? Ah, I know I did go to San Francisco and he was going to San Francisco also.
>
> Q. And you returned on December 16th, three days later, on the same plane with him; didn't you?
>
> A. Yeah, I think so.

Opupele's attorney objected and a bench conference was held. The following exchange occurred at the bench conference.

---

ruling on the issue of probable cause for the search warrant.

5. According to the record, the prosecution failed to comply with this order of the court. No such written statement is part of the record on appeal and the prosecution does not represent that such a writing was ever completed.

6. The time frame between the delivery of the drugs by Adriano and the execution of the search warrant by the police was not addressed by either of the testifying police officers. Gaspar's testimony is the only evidence presented at trial on this issue and was not challenged by the prosecution's cross-examination. It is, therefore, uncontroverted.

[Opupele's attorney]: I object. The reason I object is because, although I've been trying for months to get some discovery from the government, you know, any reports, what have you, about my client [and] Mr. Adriano ... [I've] never gotten a thing about any of this stuff. Not even one shred of paper. It's hard for me to imagine that there's no police report of this ...

[PA]. Your Honor, first of all, this was not gotten from police reports.... This was irrelevant until he took the stand and is now making it sound like this guy was just a mere acquaintance.... Your Honor, take a look at all the stuff. Please do. None of this was relevant, and none of this should have been relevant until they put Adriano in the case. Until [Opupele's] taking the stand and making it sound like a mere acquaintance[.] And I asked him, did you go on any trips with the guy. What's the extent of your relationship. So I'm entitled to go into this now. Before it wasn't relevant.

[Court]. All right. Overrule the objection.

After the close of the evidentiary portion of the trial, the court settled the jury instructions. Opupele had proposed the following jury instruction, number 4:

> The possession of a drug for the purpose of abandoning it, disposing of it, or of reporting it to police is not unlawful. The burden is upon the prosecution to prove beyond a reasonable doubt that the Defendant possessed the drug for a purpose other than abandoning it, disposing of it, or of reporting it to police. If the prosecution fails to meet its burden, then you must find the Defendant not guilty.

In conference on the settling of instructions, the court stated that it would give the jury proposed defense instruction number 3, stating that "[m]ere proximity to a drug, mere presence or mere association with a person who does control the drug without more is insufficient to support a finding of actual or constructive possession." The court then stated that instruction number 4 was refused. The following colloquy occurred:

[Opupele's attorney]. We think instruction [number 4] is required when it is requested given the facts of our case.

. . .

[PA]. I understand the Court is permitting *defense to argue this* [instruction.]

[Court]. I am permitting them to argue it.

Instruction number 4 was not given to the jury.

The jury returned a verdict of guilty on both counts. Opupele was sentenced to twenty years incarceration on count one and five years on count two, to be served concurrently. Opupele timely appealed his conviction.

## II. DISCUSSION

### A. The trial court failed to follow the procedures mandated by HRE Rule 510 in determining whether the identity of the confidential informant needed to be revealed.

HRE Rule 510 provides, in pertinent part, that:

(a) Rule of privilege. The government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer[.]

. . .

(c) Exceptions.

. . .

(2) Testimony on merits. *If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case* ... and the government invokes the privilege, the judge shall give the government an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.... *If the judge finds that there is a reasonable probability that the informer can give the testimony,* and the government elects not to disclose the informer's identity, the

judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate[.]

(Emphases added.)

In determining whether information regarding a CI must be disclosed, Hawai'i courts use the following test, as set forth by the United States Supreme Court:

> Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*State v. Kapiko,* 88 Hawai'i 396, 403, 967 P.2d 228, 235 (1998) (citing *State v. Davenport,* 55 Haw. 90, 102, 516 P.2d 65, 73 (1973) (quoting *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957))).

■ Opupele filed a motion for disclosure of the identity of the CI, arguing that he or she would be able to give testimony necessary to a fair determination of Opupele's guilt and that therefore the exception in HRE 510(c)(2) applied. At the hearing on July 24, 1997, the circuit court ordered the prosecution to submit the unredacted affidavit for *in camera* inspection to determine if any information "should be unredacted." The circuit court stated that "as far as I'm concerned under Rule 510 that's as much as I intend to do at this point."

The circuit court's actions regarding Opupele's motion were erroneous. The circuit court apparently presumed that the informer privilege applied and reviewed the affidavit to determine if there was any information that could be released without disclosing the identity of the informant. However, the circuit court was required by HRE 510 to determine if any exception to the confidential informant privilege applied that might require the prosecution to elect between disclosure of the informer's identity and dismissal of the charges. The circuit court erred by not determining whether an exception to the

informer privilege applied. *See generally State v. Rodrigues,* 88 Hawai'i 363, 966 P.2d 1089 (1998) (outlining the duties of a reviewing judge faced with a challenge to the prosecution's assertion of the HRE 510 informer privilege).

In this case, the judge did not make any findings as to whether the CI was a necessary witness. Under the facts of this case and the standard set forth in *Kapiko, supra,* we are unable to state that the lack of findings was harmless error. The reviewing court must consider, under the particular factual circumstances of the case, the possible defenses and possible significance of the testimony of the CI.[7] Therefore, we must vacate Opupele's conviction and remand for determination of the applicability of the HRE 510(c)(2) exception to the prosecution's claim of informer privilege.

**B. The judge did not err by refusing to instruct the jury on the defense of possession for the purpose of abandonment, disposal, or reporting to the police.**

■ Our cases have firmly established that a defendant is entitled to an instruction on every defense or theory of defense having *any* support in the evidence, provided such evidence would support the consideration of that issue by the jury, *no matter how weak, inconclusive, or unsatisfactory the evidence may be.*

*State v. Maelega,* 80 Hawai'i 172, 178–79, 907 P.2d 758, 764–65 (1995)(emphases in original) (citation and internal quotation marks omitted). "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Arceo,* 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996) (citations and internal quotation marks omitted).

The prosecution, relying on *State v. Mundell,* 8 Haw.App. 610, 822 P.2d 23, *reconsideration denied,* 8 Haw.App. 661, 868 P.2d 466

---

7. Specifically, Opupele argues that the CI may have information which is material to Opupele's claim that he was ignorant of the presence of the cocaine in the luggage and that Adriano's motive was revenge.

(1991), argues that, because Opupele had the opportunity to argue his theory of the defense, it was not erroneous for the court to refuse to give the instruction. In the alternative, the prosecution argues that there was no evidence to support such a defense. We agree that there was no evidence to support the giving of this instruction. Therefore, we need not reach the issue of whether this defense should be recognized in Hawai'i.

The trial court instructed the jury that:

[Instruction No. 18] The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

[Instruction No. 19] Mere proximity to a drug, mere presence, or mere association with a person who does control a drug without more is insufficient to support a finding of actual or constructive possession.

The correctness of Instruction No. 18, as a general definition of possession, is not in dispute. Opupele contends that, even though one may be in actual possession of a drug or drug paraphernalia, it is a defense if the direct physical control over the drug is of minimal duration and for the sole purpose of disposing of the drug or reporting it to police.[8]

HRS § 701–115(1) (1993) provides that "[a] defense is a fact or set of facts which negatives penal liability." The Hawai'i appellate courts have not previously addressed the defense of possession for the sole purpose of disposing of contraband or reporting it to police. We recognize that courts in other jurisdictions have recognized this as a defense to a criminal prosecution. *See, e.g., Jordan v. State,* 819 P.2d 39 (Alaska App. 1991), *Moreau v. State,* 588 P.2d 275 (Alaska 1978); *People v. Mijares,* 6 Cal.3d 415, 99 Cal.Rptr. 139, 491 P.2d 1115 (Cal.1971). Under the facts of this case, however, it is unnecessary to decide whether this defense should be recognized.

■ The prosecution contends that (1) Opupele's ability to argue this defense to the jury justified the court's failure to give an instruction and (2) that there was no evidence in the record to support this defense. The prosecution relies upon *Mundell* for its first assertion. In that case, the Intermediate Court of Appeals held that it was not plain error for the trial court to fail, *sua sponte,* to instruct the jury that "mere proximity to the drug, mere presence, or mere association [with] the person who does control the drug is insufficient to support a finding of possession." 8 Haw.App. at 620–21, 822 P.2d at 29. The jury in *Mundell* was instructed on constructive possession, that "[a] person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." *Id.* at 615–16, 822 P.2d at 26. In *Mundell,* the instruction, the omission of which was claimed as plain error on appeal, was unnecessary because it was superfluous to the instruction on constructive possession. If a person is in mere proximity to contraband, the person does not have the intention to exercise dominion or control over it. Because the requested proposition was already adequately explained to the jury in the instruction on constructive possession, it was not plain error warranting reversal for the trial court to fail to instruct on mere proximity.

---

8. This proposition is distinguishable from the situation in which the possession is unknowing or involuntary. HRS § 702–202 (1993) provides that "[p]ossession is a voluntary act if the defendant knowingly procured or received the thing possessed or if the defendant was aware of the defendant's control if it for a sufficient period to have been able to terminate the defendant's possession." Opupele did not raise the applicability of this statutory section before the circuit court or on appeal.

■ It is true that, in *Mundell,* the ICA noted that the defendant was able to argue this theory to the jury. In our view, the presentation of a defense to the jury in argument has relevance only to whether the appellate court will address an issue as plain error. "[T]he decision to take notice of plain error must turn on the facts of the particular case to correct errors that seriously affect the fairness, integrity or public reputation of judicial proceedings." *State v. Fox,* 70 Haw. 46, 56, 760 P.2d 670, 675 (1988) (citation and internal quotation marks omitted). Argument on the substance of the omitted jury instruction will decrease the harm caused to the defendant by the omission and therefore affect the appellate court's decision whether to take up the issue on plain error. However, we reject the prosecution's assertion that, where a defendant is entitled to an instruction on a defense and makes a proper request for the instruction, the trial court's refusal to so instruct the jury is justified by allowing closing argument to the jury on the substance of the omitted instruction. This is inconsistent with our prior case law, and the prosecution's reliance on *Mundell* for this proposition is misplaced.

■ The prosecution's second contention is that there is no evidence in the record to support Opupele's requested instruction on possession for the sole purpose of disposing of the drug or reporting it to police. We agree. Opupele testified that he did not know that there would be drugs in the bag which Adriano returned, that seconds after he opened the bag the police entered with guns and arrested him and that he did not have time to formulate a plan as to what he was going to do with the drugs. Opupele did not testify that he would have disposed of the drugs or turned them over to the police. On the contrary, Opupele testified that he did not have time to formulate any plan. Therefore, there was no evidence from which the jury could have inferred that Opupele's intent was to dispose of the drugs or turn them over to the police. It was not erroneous for the trial court to refuse Opupele's requested instruction.

**C. Opupele's failure to raise the argument that the search warrant was anticipatory constitutes a waiver of this argument under HRPP Rule 12.**

■ In *State v. Scott,* 87 Hawai'i 80, 951 P.2d 1243 (1998), we held that anticipatory search warrants (ASWs) were not authorized by HRS § 803–31 (1993) [9] and therefore affirmed the circuit court's order suppressing evidence in that case. Opupele now argues that the search warrant in the instant case was also an ASW and therefore that the circuit court erred in denying his motion to suppress evidence. The prosecution concedes that the warrant was an ASW, but argues alternatively that either: (1) the decision in *Scott* should not be applied retroactively; (2) the legislature's subsequent amendment of HRS § 803–31 should be applied retroactively; or (3) this court should not rule on the issue due to Opupele's failure to raise it in the proceedings below.

> Although judicial decisions are assumed to apply retroactively, such application is not automatic.... [W]here substantial prejudice results from the retrospective application of new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only

*State v. Ikezawa,* 75 Haw. 210, 214–15, 857 P.2d 593, 597–98 (1993) (footnote omitted).

In *Ikezawa,* we held that, because the defendant in that case had relied on clear precedent, a subsequent case overruling that precedent would not be applied retroactively. Retroactive application of the subsequent case in *Ikezawa* would have resulted in clear prejudice to the defendant. Distinguishing *Ikezawa,* in *State v. Okuno,* 81 Hawai'i 226, 229, 915 P.2d 700, 703 (1996), we applied a judicial decision retroactively because

> search for certain articles supposed to be in the possession of one who is charged with having obtained them illegally, or who keeps them illegally, or with the intent of using them as a means of committing a certain offense.

9. At the time of our decision in *Scott,* this statute provided that:

> A search warrant is an order in writing made by a judge or other magistrate, directed to an officer of justice, commanding the officer to

Okuno has failed to show how he is substantially prejudiced by the retrospective application of the court's interpretation of HRS § 286–261(d) in [*State v.] Toyomura* [, 80 Hawai'i 8, 904 P.2d 893 (1995) ]. This court was afforded its first opportunity, in *Toyomura*, to interpret section 286–261(d); thus, there is no previous precedent upon which Okuno could have relied. Retrospective application of *Toyomura* to cases pending when it was decided satisfies the requirements enunciated in *Ikezawa* [.]

The instant case is very similar to that presented in *Okuno*. There was no precedent interpreting the application of HRS § 803–31 as to ASWs. The prosecution claims that "[t]he extent to which law enforcement officials relied upon the *then permissible* practice of utilizing [ASWs] was great." However, ASWs were not "permissible." As *Scott* held, ASWs were not authorized by the plain language of the statute. The prosecution's only possible reliance was upon an erroneous and previously unchallenged interpretation of the governing law. This is qualitatively different from the situation in *Ikezawa*, wherein the defendant relied upon a clearly enunciated, but subsequently overruled, judicial decision. Therefore, we reject the prosecution's argument that *Scott* should be given prospective application only.

 Subsequent to *Scott*, the legislature amended HRS § 803–31. The amendment authorized the issuance of search warrants "to search for certain articles supposed to be in the possession *or which are anticipated to be in the possession* of" an individual. 1998 Haw. Sess. L. Act 65 § 2. The amendment took effect on April 29, 1998. The prosecution argues that the amendment to HRS § 803–31 should be applied retroactively. We reject the prosecution's argument.

HRS § 1–3 (1993) provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." The amendment to HRS § 803–31 nowhere expresses a legislative intent that it be applied retroactively. We believe that the retroactive validation of a search warrant not legally authorized at the time of issuance would violate a defendant's constitutional rights to due process and freedom from unreasonable searches and seizures. Therefore, we hold that the amendment to HRS § 803–31 does not apply retroactively.

The prosecution's final contention is that Opupele waived his challenge that the search warrant was an anticipatory ASW by failing to raise it before trial. We agree. HRPP Rule 12 provides, in relevant part, that:

(b). . . . The following must be raised prior to trial: . . . (3) motions to suppress evidence[.]

. . .

(f) Failure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Opupele filed a motion to suppress the evidence on the basis that the police failed to comply with the "knock and announce" rule. He thereafter filed a supplemental memorandum, raising the issue of probable cause to issue the warrant. At no point prior to the trial did Opupele raise the issue that the search warrant was an invalid ASW. Therefore, pursuant to HRPP Rule 12(f), Opupele waived this challenge. Opupele has not shown cause as to why he should be granted relief from the waiver. Therefore, the circuit court did not err by denying his motion to suppress the evidence.

### III. CONCLUSION

For the foregoing reasons, we vacate Opupele's conviction and remand for determination by the circuit court of the applicability of the informer privilege. Because there was no reversible *trial* error, the circuit court's determination may or may not require a retrial. If the circuit court determines that no exception to the HRE Rule 510 privilege applies, then it shall so order and reenter the judgment of conviction. If the circuit court determines that the identity of the CI must be revealed, it must order the prosecution to elect whether to disclose the identity or dismiss the charges. If the prosecution elects to disclose the identity, a new trial must be held.