53 P.3d 806

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Leonard Denichi HIRONAKA,
Defendant–Appellant.**

No. 24116.

Supreme Court of Hawai'i.

Sept. 6, 2002.

Joyce K. Matsumori–Hoshijo, Deputy Public Defender, on the briefs, for the defendant-appellant, Leonard Denichi Hironaka.

Bryan K. Sano, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee, State of Hawai'i.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ.; RAMIL, J., dissenting; and ACOBA, J., concurring separately.

Opinion of the Court by LEVINSON, J.

The defendant-appellant, Leonard Denichi Hironaka, appeals from the judgment of conviction and sentence of the first circuit court, the Honorable Marie N. Milks presiding, finding him guilty of promoting a dangerous drug in the third degree in violation of Hawai'i Revised Statutes (HRS) § 712–1243 (1993 & Supp.2000).[1] Hironaka argues that the circuit court erred in: (1) failing to instruct the jury that (a) " 'possession' means conscious and substantial possession, not a mere involuntary or superficial possession and much more than a passing control, fleeting and shadowy in nature," (b) "mere prox-

---

1. HRS § 712–1243 provides in relevant part that "[a] person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount." In addition, as amended in 1996, the statute provides:

Notwithstanding any law to the contrary, if the commission of the offense ... involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-half-years, at the discretion of the sentencing court.

imity to an object, mere association with a person who does control an object, without more, is insufficient to support a finding of possession," and (c) all twelve jurors must unanimously agree that Hironaka either (i) had actual possession or (ii) had constructive possession of the methamphetamine; and (2) denying Hironaka's motion to dismiss on the grounds that the offense was *de minimis* under HRS § 702–236(1) (1993).[2]

For the reasons discussed *infra* in section III, we hold that Hironaka's claims are without merit and, accordingly, affirm the circuit court's judgment and sentence.

## I. BACKGROUND

On the morning of August 25, 2000, Honolulu Police Department (HPD) Officers Scott Viera and Howard Lestrong were patrolling the Wai'anae area beaches when they saw a white van parked on the side of the road by Dolphin Beach. The van attracted their attention because the sliding door on the passenger's side of the vehicle was open and some items—including spare tires, fishing poles, and a disassembled tent—"appeared to be hanging out of the door." Suspecting that the vehicle had either been broken into or stolen and abandoned, Officer Viera investigated, walking alongside the vehicle, whereupon he noticed a glass pipe on the passenger's seat. Officer Lestrong followed Officer Viera and also observed the glass pipe, as well as a white coating on the bulbous end of the pipe. Based on his training and experience, Officer Lestrong suspected that the discolored residue in the pipe was methamphetamine. Officer Viera then looked into the open door of the vehicle and observed Hironaka sleeping in the rear of the van. Officer Viera identified himself as a police officer and asked Hironaka to step out of the vehicle. At first, Hironka did not respond, but after a second request, he awoke, star-

tled. Officer Viera asked him who he was and then explained to Hironaka that he was going to be arrested in connection with the glass pipe on the passenger seat. Hironaka told Officer Viera that the pipe was not his, but to no avail.

After arresting Hironaka, Officer Viera recovered the glass pipe and dusted it for fingerprints. Latent prints detected on the pipe matched Hironaka's known fingerprints. Laboratory tests of the residue in the glass pipe determined that it weighed 0.044 gram and that it contained methamphetamine.

On September 5, 2000, Hironaka was charged with promoting a dangerous drug in the third degree, in violation of HRS § 712–1243, see *supra* note 1, and unlawful use of drug paraphernalia, in violation of HRS § 329–43(a) (1993).[3]

At trial, Hironaka testified that early in the morning of August 25, 2000, he went on a fishing trip to Makua Beach with his brother and three friends. Hironaka's brother Kevin drove the two of them in his car, their friend Frankie drove his truck, and their friend Mike drove his white van. They parked alongside the beach where they set up a tent and fishing equipment. Hironaka and his friends then gathered inside the tent, where his friends smoked "crystal meth" from a glass pipe while Hironaka rolled a marijuana "joint." Hironaka testified that he did not smoke any methamphetamine from the pipe. Rather, after he finished rolling two joints, Hironaka exited the tent, lit one of the joints, smoked it, and passed it around. They spent the rest of the morning catching bait and fishing.

Sometime after 6:30 a.m., the group loaded the fish they had caught into a cooler. Hironaka's friends then left to buy ice for the fish and food for breakfast, while Hironaka

**2.** HRS § 702–236(1) provides in relevant part:

> The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:
>
> . . . .
>
> (b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent

too trivial to warrant the condemnation of conviction; or
> (c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.

**3.** HRS § 329–43.5(a) provides in relevant part that "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia[.]"

agreed to stay behind and watch their campsite. Hironaka's brother left for work. Hironaka soon became tired and decided to take a nap in Mike's van. Hironaka removed some tires from the van to make some space, disassembled the tent, stuffed most of his friends' belongings inside, and then dragged the tent to the van. He then attempted to throw the tent with all of its contents into the van, but the contents, including the glass pipe that his friends had used earlier to smoke the methamphetamine, fell out of the tent and onto the ground. Hironaka picked up the pipe and tried to throw it onto the front passenger seat of the van, but it bounced off the back of the seat and onto the floor. He then picked up the pipe a second time and placed it on the front passenger seat. He testified at trial that he placed the pipe on the seat so that his friends would see it when they returned and not wake him up from his nap. Hironaka further testified that each time he picked up the pipe he held it for approximately one to two seconds and did not notice whether there was anything in it. He acknowledged, however, that he could have discarded the pipe in a rubbish can, but did not. After placing the pipe on the passenger's seat, Hironaka ate a sandwich in the back of the van and fell asleep. Sometime later, he awoke to the static of a police officer's radio.

After the prosecution presented its case at trial, Hironaka moved for a judgment of acquittal as to both counts, arguing, with respect to the drug paraphernalia charge, that the prosecution had adduced insufficient evidence that he had used or intended to use the pipe and, with respect to the drug possession charge, that any violation was, in any event, *de minimis*, based on the small amount of methamphetamine in the glass pipe. The circuit court denied Hironaka's motion.

During settling jury instructions, the circuit court refused, over Hironaka's objection, to give three of his proposed jury in-

structions. First, the circuit court struck a sentence from Hironaka's Proposed Jury Instruction No. 3, which stated, "Mere proximity to an object, mere presence or mere association with a person who does control an object, without more, is insufficient to support a finding of possession." The circuit court stated that Hironaka could argue this to the jury, but "for the Court to [so] instruct would be to comment on the evidence[,]" and remarked that it did not "read either [*State v.*] *Jenkins* [, 93 Hawai'i 87, 997 P.2d 13 (2000),] or [*State v.*] *Mundell* [, 8 Haw.App. 610, 822 P.2d 23 (1991),] to require the giving of that instruction." Second, the circuit court refused to give Hironaka's Proposed Jury Instruction No. 7, which stated, *inter alia*, that " 'possession' means conscious and substantial possession, not a mere involuntary or superficial possession and much more than a passing control, fleeting and shadowy in nature." Similarly, the court stated that "[t]o give this instruction would be to unduly highlight one aspect and would be redundant and repetitious." Finally, the circuit court refused to give Hironaka's Proposed Jury Instruction No. 8, a specific unanimity instruction that "all twelve jurors must agree that the knowing possession of a dangerous drug ... is based upon the same substance and the same act of possession, or the possession with the intent to use drug paraphernalia ... is based upon the same item and the same act of possession." [4] During the circuit court's hearing on the unanimity instruction, the prosecution assured the court that it was "arguing one continuous act of possession and whether you have an item in your hand or put it down, whether it's actual or constructive, it still can be one continuous act of possession. The State is going to be arguing that there was no termination of the possession of this item." The circuit court then stated, "There are no two acts or two types of conduct for which the jury has to discreetly determine the conduct. Possession is either actual or

---

4. Prior to trial, Hironaka had moved in limine for an order requiring the prosecution to "elect the specific act upon which it was relying to establish the 'conduct' element of each charged offense[,]" pursuant to *State v. Arceo*, 84 Hawai'i 1, 32–33, 928 P.2d 843, 874–75 (1996). The circuit court denied the motion, reasoning that "[h]e's going to be admitting it anyway," by virtue of the fact that Hironaka intended to testify at trial that he picked up the glass pipe, threw it into the van, and then placed the pipe on the front seat of the van.

constructive. It's in the alternate disjunctive and the Court finds no necessity to give an *Ar[c]eo* instruction."

The circuit court subsequently instructed the jury on possession as follows:

A person is in possession of an object if the person knowingly procured or received the thing possessed or was aware of his control of it for a sufficient period of time to have terminated his possession.

The law recognizes two kinds of possession: actual and constructive possession.

A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing for a sufficient period to have terminated his possession, either directly or through another person or persons is then in constructive possession of it.

The element of possession has been proved if you find beyond a reasonable doubt that the defendant had actual or constructive possession.

During closing argument, after reiterating the foregoing instruction, the prosecution argued in relevant part:

Now the defendant had—was the only one there, by his own statement, from seven o'clock in the morning till 10:30 when the police officers arrive. He said at some point he moved that tent up from the beach area and threw it in the van. Now when the pipe fell out of the tent, he said he picked it up. That's easy. He had direct physical control over it at that point in time. He also told you he could have thrown it away, could have gone to a rubbish can, broke it, smashed it, threw it away. But he didn't. What he did do was he put it in the van, and the same van that he climbed into and went to sleep for three hours. The defendant did have the power and control over this object. He knew

what it was and he still kept it. He didn't destroy it. He put it in the front seat of the van. That's his statement. He did have constructive possession of the pipe on August 25th, 2000.[5]

In response, Hironaka's attorney argued in relevant part:

So how was a guy who just picks up the pipe to put it on the front seat where the rightful owner can see it, how is the guy supposed to know that that film, if he even saw it, contained methamphetamine? There's no way he can know, and there's no way he did know that it contained that point 044 substance containing methamphetamine.

On November 22, 2000, the jury found Hironaka guilty of promoting a dangerous drug in the third degree, but not guilty of unlawful use of drug paraphernalia.

On December 13, 2000, Hironaka filed a motion to dismiss the charge of promoting a dangerous drug in the third degree, arguing that he did not "possess" the methamphetamine as a matter of law under the holding of *State v. Hogue*, 52 Haw. 660, 664–65, 486 P.2d 403, 406 (1971), because the prosecution failed to prove "conscious and substantial possession, not a mere involuntary or superficial possession, and much more than a passing control, fleeting and shadowy in nature." In addition, Hironaka argued that the circuit court should dismiss the charge as *de minimis* under HRS § 702–236(1), see *supra* note 2. The circuit court denied the motion on January 19, 2001.

On January 30, 2001, the trial court sentenced Hironaka to a five-year term of imprisonment, with a mandatory minimum of eight months, pursuant to HRS § 712–1243.

## II. STANDARDS OF REVIEW

### A. Questions of Constitutional Law

■ We review alleged constitutional errors of the circuit court under the "right/

---

5. Contrary to its own theory of the case, however, the prosecution briefly speculated on rebuttal, "What's more likely that happened is the defendant was cruising at the beach all week. He had a lot of stuff that he had taken out of the van over the period he'd been there and he was alone there in the van, smoking the pipe and left it on the seat of the passenger seat of the van." The prosecution presented absolutely no evidence of such a scenario, however.

wrong" standard by exercising our "own independent judgment based on the facts of the case." *State v. Carvalho,* 90 Hawai'i 280, 285, 978 P.2d 718, 723 (1999) (citations and internal quotation marks omitted).

## B. *Jury Instructions*

■■■ We review the circuit court's jury instructions to determine whether, "when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading." *State v. Valentine,* 93 Hawai'i 199, 203, 998 P.2d 479, 483 (2000) (citations and internal quotations signals omitted).

> [E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.
>
> [E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*Id.* (citations and internal quotation marks omitted).

## C. *Motion for Judgment of Acquittal*

■■■ We review a ruling on a motion for judgment of acquittal using the same standard as the trial court. *State v. Jenkins,* 93 Hawai'i 87, 99, 997 P.2d 13, 25 (2000).

> The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.

*State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (citations and internal quotation marks omitted).

## D. *De Minimis Violations*

■■■ We review the decision of the circuit court regarding whether to dismiss a prosecution under HRS § 702–236 for abuse of discretion:

> The authority to dismiss a prosecution under HRS § 702–236 rests in the sound discretion of the trial court. Therefore, a court's decision under HRS § 702–236 is reviewed for abuse of discretion. We will reverse the trial court only if the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*State v. Viernes,* 92 Hawai'i 130, 133, 988 P.2d 195, 198 (1999) (quoting *State v. Ornellas,* 79 Hawai'i 418, 420, 903 P.2d 723, 725 (App.1995)).

## III. *DISCUSSION*

### A. *The Circuit Court Did Not Err In Refusing To Give Hironaka's Proposed Jury Instructions.*

■■■ Hawai'i law is well-settled that "a defendant is entitled to an instruction on every defense or theory of defense having any support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be." *State v. Maelega,* 80 Hawai'i 172, 178–79, 907 P.2d 758, 764–65 (1995). This does not mean, however, that a defendant is entitled to *any* instruction that he or she requests, irrespective of how the trial court does, in fact, instruct the jury on the applicable law. Thus, on review, we must ascertain whether the jury instructions given by the circuit court, "when read and considered as a whole, . . . are prejudicially insufficient, erroneous, inconsistent, or misleading." *Valentine,* 93 Hawai'i at 203, 998 P.2d at 483. Because the circuit court's jury instructions properly explained the applicable law required for Hironaka's defense, we hold that Hironaka's claims of error regarding the instructions are without merit.

1. *Hironaka's "fleeting possession" instruction partially misconstrues the applicable law and is otherwise redundant.*

Citing *State v. Hogue*, 52 Haw. 660, 664, 486 P.2d 403, 405 (1971), Hironaka argues that the circuit court erred in refusing to instruct the jury that " 'possession' means conscious and substantial possession, not a mere involuntary or superficial possession and much more than a passing control, fleeting and shadowy in nature." Hironaka misreads both the holding of *Hogue* and its continuing vitality following the enactment of HRS § 702–202.

In *Hogue*, this court approved the Florida Supreme Court's definition of possession— "conscious and substantial possession . . . as distinguished from a mere involuntary or superficial possession"—explicated in *State v. Eckroth*, 238 So.2d 75, 76 (Fla.1970), and held that taking one or two puffs of marijuana from a pipe demonstrated the requisite "conscious and substantial possession, not a mere involuntary or superficial possession, and much more than a passing control, fleeting and shadowy in nature." 52 Haw. at 664–65, 486 P.2d at 406. But neither this court in *Hogue* nor the Florida Supreme Court in *Eckroth* expressly held that control, for the purposes of possession, turned on whether the prosecution had proved more than "a passing control, fleeting and shadowy in nature." In fact, the Florida Supreme Court specifically disavowed this language in *Eckroth*, overruling the lower appellate court that had used it, and clearly held that "[p]ossession and control . . . need not be . . . of great duration." [6] 238 So.2d at 77–78.

 Following this court's decision in *Hogue*, the Hawai'i Penal Code was recodified with significant substantive revisions and additions, including a definition of possession as a voluntary act: "Possession is a voluntary act if the defendant knowingly procured or received the thing possessed or if the defendant was aware of the defendant's control of it for a sufficient period to have been able to

terminate the defendant's possession." HRS § 702–202 (1993). This statutory definition supersedes this court's definition of possession found in *Hogue*. It both codifies the "conscious" element of *Hogue* ("knowingly procured or received" or "aware of the defendant's control") and clarifies that "substantial possession, not a mere involuntary or superficial possession" means "for a sufficient period to have been able to terminate" possession. HRS § 702–202 does not, however, incorporate the "fleeting" element urged by Hironaka. The temporal element that the legislature did adopt is qualitative rather than quantitative; possession of an object is substantial and neither involuntary nor superficial if a defendant had time to terminate his or her control over the object but did not, either by choice or by failure to act. This is based on the idea that "[a]n actor who is aware of his [or her] control of the thing possessed for a period that would enable him [or her] to terminate control has failed to act in the face of a legal duty imposed by the law that makes his [or her] possession criminal." *State v. Moniz*, 92 Hawai'i 472, 481, 992 P.2d 741, 750 (App.2000) (Acoba, J., concurring) (citing *Model Penal Code and Commentaries* § 2.01 cmt. 4 at 224 (Official Draft and Revised Comments 1985)). There is no reason why a defendant cannot possess an illegal substance for a brief period of time, so long as it was enough time to have permitted him or her to have terminated the possession. Therefore, Hironaka was not entitled to a jury instruction that defined possession as "much more than a passing control, fleeting and shadowy in nature," because such an instruction has no basis in Hawai'i law.

The rest of Hironaka's proposed jury instruction, in light of *Hogue*, would have been redundant and confusing, considering the instruction that the circuit court did give based on HRS § 702–202. This instruction was all that Hironaka was entitled to and required for his defense. Hironaka admitted that he twice picked up the glass pipe and placed it on the front passenger seat of the van, after

---

**6.** Thus, Hironaka misreads *Hogue* to have adopted the holding of the Florida district court of appeals in *Eckroth* when, in fact, it adopted the holding of the Florida Supreme Court reject-

ing the lower court's holding. Moreover, he cites the lower court's opinion as the Florida Supreme Court's.

which he ate and slept alone in the van. Hironaka's defense (aside from the brevity of his possession and lack of ownership/control) was that he did not know that the pipe contained methamphetamine. The circuit court's instruction on possession clearly explained that the prosecution had to prove that Hironaka *knowingly* possessed the methamphetamine for a sufficient period of time to have terminated possession. Thus, the circuit court's instruction on possession was not "prejudicially insufficient, erroneous, inconsistent, or misleading."

Accordingly, the circuit court did not err in refusing to give Hironaka's Proposed Jury Instruction No. 7.

2. *Hironaka's proposed "mere proximity" jury instruction was unnecessary on the facts of this case.*

Hironaka argues that the circuit court erred in not instructing the jury that "[m]ere proximity to an object, mere presence, or mere association with a person who does control an object, without more, is insufficient to support a finding of possession." Hironaka included this sentence as part of his proposed jury instruction on constructive possession, citing *State v. Mundell,* 8 Haw. App. 610, 822 P.2d 23 (1991), *overruled on other grounds by State v. Jenkins,* 93 Hawai'i 87, 997 P.2d 13 (2000), for support. Because the circuit court's instruction on constructive possession was sufficient in light of the facts of this case, Hironaka's argument is without merit.

 Hironaka is correct that "mere proximity to the drug, mere presence, or mere association [with] the person who does control the drug is insufficient to support a finding of possession." *Mundell,* 8 Haw.App. at 620, 822 P.2d at 29 (citations and internal quotation marks omitted). But a proper jury instruction on constructive possession precludes a finding of possession based on the defendant's "mere proximity" to an object, inasmuch as it instructs the jury, as did the circuit court in the present matter, that the defendant must have both "the power and the intention ... to exercise dominion or control over" an object, in order to find that he or she constructively possessed that ob-

ject. Naturally, "[i]f a person is in mere proximity to contraband, the person does not have the intention to exercise dominion or control over it." *State v. Opupele,* 88 Hawai'i 433, 439, 967 P.2d 265, 271 (1998). Thus, it is generally unnecessary to give a "mere proximity" instruction if the jury is otherwise properly instructed on the law of constructive possession. *Id.* (calling a "mere proximity" instruction "superfluous" to an instruction on constructive possession); *see also Mundell,* 8 Haw.App. at 615–16, 621, 822 P.2d at 26, 29 (holding that failure to give a "mere proximity" instruction did not constitute plain error because the trial court had correctly instructed the jury on constructive possession); *Tran v. State,* 246 Ga.App. 153, 539 S.E.2d 862, 869 (2001) (holding that trial court did not err by refusing to give instruction that "constructive possession of narcotics cannot rest upon mere spatial proximity to the narcotics" because the jury instructions adequately covered the principle by explaining constructive possession and that defendant could not be convicted simply on account of his presence at the crime scene); *State v. Castle,* 86 Wash.App. 48, 935 P.2d 656, 662–63 (1997) (holding that trial court did not err by refusing to give "mere proximity" instruction because it properly instructed the jury on constructive possession); *State v. Huff,* 64 Wash.App. 641, 826 P.2d 698, 706 (1992) (holding that trial court did not err by refusing to give "mere proximity" instruction because it properly instructed the jury on constructive possession). This is particularly true if "mere proximity" is not the defendant's theory of the case. *See Maelega,* 80 Hawai'i at 178–79, 907 P.2d at 764–65.

 In the present matter, the circuit court instructed the jury regarding constructive possession as follows:

A person who, although not in actual possession, *knowingly has both the power and the intention,* at a given time, *to exercise dominion or control over a thing* for a sufficient period to have terminated his possession, either directly or through another person or persons is then in constructive possession of it.

(Emphases added.) Thus, the circuit court's instruction on constructive possession clearly precluded the jury from finding that Hironaka possessed the pipe, with its methamphet-

amine residue, based merely on his proximity to it, because, as instructed, the jury had to find both that Hironaka knew that the pipe contained methamphetamine and that he intended to exercise dominion or control over the drug in order to find that he constructively possessed it.

Moreover, the proximity of the drugs to Hironaka was not central to the case. The prosecution did not argue that Hironaka possessed the methamphetamine merely because of its proximity to him; it did not have to, because Hironaka admitted that he picked up the glass pipe twice and placed it on the seat next to him while he slept. Inasmuch as Hironaka admitted that he had the power to dispose of the pipe, the only real factual dispute between the prosecution and the defense was whether Hironaka knew the pipe he picked up and placed on the seat next to him contained methamphetamine. Hironaka's defense was that he did not know that the glass pipe contained methamphetamine. The prosecution's theory was that he did know that the pipe contained methamphetamine because he had seen his friends smoking methamphetamine from the pipe and the drug's residue was still visible in the pipe when the police found it. This not being a case that turned on the proximity of the drugs, the circuit court's jury instruction on constructive possession was not "prejudicially insufficient, erroneous, inconsistent, or misleading."

Accordingly, the circuit court did not err in refusing to give a "mere proximity" jury instruction.

3. *The circuit court did not err in refusing to give a "unanimity" instruction because Hironaka's possession was a continuing offense and did not comprise distinct and separate culpable acts.*

Hironaka claims on appeal that the trial court erred in failing to give a specific una-nimity instruction, pursuant to *State v. Arceo*, 84 Hawai'i 1, 928 P.2d 843 (1996), because all twelve jurors were required to agree that Hironaka either had actual or constructive possession of the methamphetamine, beyond a reasonable doubt, thus violating his right to a unanimous jury verdict under article I, sections 5 and 14 of the Hawai'i Constitution.[7] Hironaka argues that an *Arceo* instruction was necessary in the present matter because there were "two distinct instances of methamphetamine possession that the prosecution sought to prove, one constructive, the other actual[.]" According to Hironaka, "[i]t is impossible to [ascertain] from the record herein whether the jury unanimously found Hironaka guilty of actual possession of methamphetamine (when Hironaka briefly held the glass pipe and its contents) or constructive possession (when Hironaka slept in the van with the glass pipe in the front seat)." Because Hironaka's actual and constructive possession of the methamphetamine comprised a continuing course of conduct, this argument is without merit.

■ In *Arceo*, this court held that "when separate and distinct culpable acts are subsumed within a single count charging a sexual assault[,] any one of which could support a conviction thereunder[,] . . . the prosecution is required to elect the specific act upon which it is relying to establish the 'conduct' element of the charged offense[,] or . . . the trial court [must give] the jury a specific unanimity instruction." 84 Hawai'i at 32–33, 928 P.2d at 874–75. Beyond the context of sexual assault charges, this court has held that an *Arceo* unanimity instruction is required, absent an election by the prosecution, when "at trial, the prosecution adduced proof of two or more separate and distinct culpable acts; and . . . the prosecution seeks

---

7. Article I, section 5 of the Hawai'i Constitution (1978) states in relevant part:
 No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights[.]
 . . . .

Article I, section 14 of the Hawai'i Constitution (1978) states in relevant part:
 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury. . . . Juries, where the crime charged is serious, shall consist of twelve persons.

to submit to the jury that only one offense was committed." *State v. Valentine*, 93 Hawai'i 199, 208, 998 P.2d 479, 488 (2000) (holding that specific unanimity instruction was not required where the defendant's conduct constituted a "continuous struggle for possession and control of [a police officer's] firearm"). Accordingly, *Arceo* is not implicated if the prosecution adduces evidence of a series of acts by the defendant that constitute a "continuous course of conduct[,]"[8] and the prosecution "argues that the requisite conduct element is satisfied by the defendant's continuous course of conduct, albeit that the defendant's continuous course of conduct may be divisible into conceptually distinct motor activity." *State v. Rapoza*, 95 Hawai'i 321, 330, 22 P.3d 968, 977 (2001) (holding that defendant's discharging of firearm several times in the direction of each complainant "did not amount to 'separate and distinct culpable acts,' but rather betokened 'a continuous, unlawful ... series of acts set on foot by a single impulse and operated by an unintermittent force' and, thus, constituted but one 'breach of criminal law[ ]' "); *see also State v. Apao*, 95 Hawai'i 440, 447, 24 P.3d 32, 39 (2001) (holding that "a specific unanimity instruction is not required if (1) the offense is not defined in such a manner as to preclude it from being proved as a continuous offense and (2) the prosecution alleges, adduces evidence of, and argues that the defendant's actions constituted a continuous course of conduct[ ]"); *State v. Kealoha*, 95 Hawai'i 365, 376–78, 22 P.3d 1012, 1023–25 (App.2000).

While Hironaka's possession of the methamphetamine in the glass pipe might be "divisible into conceptually distinct motor ac-

tivity"—*i.e.*, (1) picking up the pipe and throwing it into the van, (2) picking up the pipe again, and (3) placing it on the passenger's seat next to him while (4) he took a nap—, like the conduct of the defendants in *Valentine* and *Rapoza*, it nevertheless constitutes a "series of acts set on foot by a single impulse and operated by an unintermittent force" and not separate and distinct culpable acts. The fact that Hironaka's possession of the methamphetamine might have constituted first actual and then constructive possession does not render his conduct divisible into separate and distinct acts of possession.[9]

It is true that in its closing arguments the prosecution did not expressly allege that Hironaka's conduct constituted a "continuous course of conduct," but there is no reason to endow these specific words with talismanic significance. The prosecution argued that the jury could convict Hironaka because he twice picked up the pipe (actual possession) and then placed it on the passenger seat of the van in which he subsequently slept for three hours (constructive possession). As the circuit court correctly noted, these acts were not in dispute; to the contrary, they were based on Hironaka's own testimony. Thus, the sole question for the jury in connection with the drug possession charge was whether Hironaka knew that the pipe contained methamphetamine when he possessed it. He either knew that the pipe contained methamphetamine or he did not; there was no evidence, nor did Hironaka or the prosecution argue, that Hironaka might have known that the pipe contained methamphetamine for the purposes of actual possession but not for constructive possession, or vice

---

8. This court has defined a continuous offense as

> a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy, or an offense which continues day by day, or a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences.

*Arceo*, 84 Hawai'i at 18, 928 P.2d at 860 (quoting *State v. Temple*, 65 Haw. 261, 267 n. 6, 650 P.2d 1358, 1362 n. 6 (1982)) (original brackets omitted).

9. It is worth observing that Hironaka could not have been charged with two counts of possession on the present record and the prosecution's theory of this case because the possession was unintermittent. Hironaka's principle is potentially limitless in scope. It would mean that unanimity instructions would be required for all kinds of constructive possession cases because one could never be certain at which specific point in time and place all twelve jurors agreed that a defendant constructively possessed an object. Concomitantly, a defendant could be charged with multiple counts of possession for possessing the same drug in the same place over any length of time.

versa. Thus, the prosecution did "allege[ ], adduce[ ] evidence of, and argue[ ] that [Hironaka's] actions constituted a continuous course of conduct." *Apao,* 95 Hawai'i at 447, 24 P.3d at 39.

Moreover, Hironaka's citation of *State v. King,* 75 Wash.App. 899, 878 P.2d 466 (1994), is unhelpful to him. In *King,* the court found that a unanimity instruction was necessary because "[t]he state's evidence tended to show two distinct instances of cocaine possession *occurring at different times, in different places, and involving two different containers[.]*" 878 P.2d at 469 (emphasis added). By contrast, in the present matter, Hironaka's actual possession and constructive possession occurred unintermittently, in the same place, and involved the same glass pipe containing the same residue of methamphetamine.

Accordingly, the circuit court did not err in denying Hironaka's request for a unanimity instruction pursuant to *Arceo.*

**B.** *The Circuit Court Did Not Err In Denying Hironaka's Motion to Dismiss.*

■ Finally, Hironaka argues that the circuit court erred in failing to dismiss the charges against him pursuant to HRS § 702–236(1), see *supra* note 2, on the grounds that the offense was a *de minimis* violation. We disagree.

HRS § 702–236 vests the circuit court with the discretion to dismiss a charge if, "it finds that the defendant's conduct[ d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]" Hironaka urges this court to hold that his possession was *de minimis,* because he only possessed 0.044 grams of residue containing methamphetamine and the jury acquitted him of the drug paraphernalia charge, thus affirming his contention that he had no intent to use the methamphetamine. Hironaka adduced no evidence, however, that the amount

of methamphetamine he was charged with possessing was incapable of producing a pharmacological or physiological effect or was not saleable. Thus, there was no evidence introduced from which the circuit court could have concluded that Hironaka's conduct did not "cause or threaten the harm or evil sought to be prevented by the law," *i.e.,* the use of the methamphetamine or its "sale or transfer for ultimate use." *State v. Vance,* 61 Haw. 291, 307, 602 P.2d 933, 944 (1979) (discussing the harm sought to be controlled by HRS § 712–1243). Consequently, the circuit court did not abuse its discretion in rejecting Hironaka's unsupported argument that the amount of methamphetamine he possessed was *de minimis.*

Accordingly, we hold that the circuit court did not err in denying Hironaka's motion to dismiss on the grounds that his violation was *de minimis.*

**IV. CONCLUSION**

In light of the foregoing, we affirm the circuit court's judgment and sentence, filed on January 30, 2000.

Concurring Opinion of ACOBA, J.

The majority outlines a two-part *de minimis* test requiring a defendant to establish "that the amount of the drug he or she possessed is incapable of producing *any* pharmacological or physiological effect" (in essence, whether the drugs are useable) and, secondly, that the amount possessed "is not, in fact saleable[.]" Majority opinion at 209, 53 P.3d at 817 (emphasis in original). I write separately (1) in favor of a third prong to be added to the test that, at the time of possession, the defendant was not engaged in a crime to support a drug habit, *see State v. Carmichael,* 99 Hawai'i 75, 93–94, 53 P.3d 214, 232–233 (Haw.2002) (Acoba, J., dissenting), and (2) to observe that an expert in pharmacology may not necessarily be required to establish that a drug is not useable or saleable.[1]

---

1. Because I believe we, as a court of last resort, should endeavor to provide as much guidance as possible to the parties, counsel, and the trial courts, I agree with the decision to publish this opinion. The majority's decision modifies and clarifies a rule of law. Various jurisdictions, both federal and state, by rule, either mandate publication of opinions clarifying a rule of law or, at the very least, advise that such opinions should be published. *See* 4th Cir. R. 36(a) (stat-

## I.

As I have indicated before, under the *de minimis* statute, Hawai'i Revised Statutes (HRS) § 702–236 (1993), the court must have "regard to the nature of the conduct alleged and the nature of the attendant circumstances[.]" Here, the nature of the conduct alleged is the possession of any amount of a dangerous drug. *See* HRS § 712–1243(1) (1993 & Supp.1999). "[T]he possession of a microscopic amount in combination with other factors indicating an inability to use or sell the [drug] may constitute a de minimis infraction." *State v. Vance*, 61 Haw. 291, 307, 602 P.2d 933, 944 (1979). "Conversely, then, possession, along with circumstances demonstrating the accompanying ability to use or to sell or to distribute the drug, would disqualify a defendant from *de minimis* consideration." *Carmichael*, at 92, 53 P.3d at 231 (Acoba, J., dissenting) (citing *Vance*, 61 Haw. at 307, 602 P.2d at 944).

Other "attendant circumstances" may also disqualify a defendant from *de minimis* consideration, pursuant to HRS § 702–236(1)(b), if they implicate the "harm or evil sought to be controlled." In regard to the specific harm or evil contemplated, the legislature had in mind a secondary purpose in prohibiting dangerous drugs in general—"to prevent crimes prompted by the need to obtain more dangerous drugs, which the legislature believed [resulted from] abuse of highly addi[c]tive drugs." *Carmichael*, at 92–93, 53 P.3d at 231–232 (Acoba, J., dissenting) (citing Commentary on HRS §§ 712–1241 to –1250).

Thus, as in this court's view in *Vance* and *State v. Viernes*, 92 Hawai'i 130, 988 P.2d 195 (1999), the legislative history, as well as the statutory scheme and its accompanying com-

mentary, reflect that: (1) the primary harm and evil sought to be prevented in proscribing drug-related offenses is abuse; and (2) correlative to the abuse of dangerous drugs, a secondary harm and evil sought to be prevented is crime prompted by such abuse. Thus, disqualifying attendant circumstances may also exist where there is evidence at the time of the possession that a defendant committed a crime in order to obtain more drugs.

In light of *Vance*, *Viernes*, and the legislative history of HRS § 712–1243, I believe courts faced with a motion to dismiss a drug-residue promotion of dangerous drugs case based on *de minimis* grounds should consider, as a threshold qualification for HRS § 712–1243 treatment, whether (1) the amount possessed was useable, or (2) the amount was saleable, or (3) the defendant was engaged in a crime to support a drug habit at the time of possession. *See Carmichael*, at 92–93, 53 P.3d at 231–232 (Acoba, J., dissenting). The foregoing three factors may be employed in the court's discretion and, in my view, would minimize any arbitrary variations among the cases.

## II.

In this case, during cross-examination of the prosecution's witnesses, Defendant did attempt to produce evidence that the drug recovered from the pipe was not useable. Defense counsel asked Officer Scott Viera, the arresting officer, whether or not there were "any loose crystals when [the officer was] looking at that pipe, in or around the pipe[.]" The officer stated that he did not see any loose crystals, and also subsequently conceded that he could not assess how much methamphetamine was in the pipe, just by looking at it. The defense also elicited from

ing that an opinion will be published if it "establishes, alters, modifies, *clarifies*, or explains a rule of law within [the Fourth] Circuit" (emphasis added)); 5th Cir. R. 47.5.1 (setting forth that an opinion is published if it "alters, or modifies an existing rule of law"); 6th Cir. R. 206(a) (stating that "whether [a decision] ... alters or modifies an existing rule of law" is one of the criteria "considered by panels in determining whether a decision will be designated for publication in the Federal Reporter"); 7th Cir. R. 53(c)(1) (stating that "[a] published opinion will be filed when the decision ... changes an exist-

ing rule of law...."); Mich. Ct. R. 7.215(A)-(B) (stating that "[a] court opinion must be published if it: ... (3) alters or modifies an existing rule of law ... (7) creates or resolves an apparent conflict of authority, whether or not the earlier opinion was reported"); Wis. Stat. § 809.23(1)(a) (stating that "[w]hile neither controlling nor fully measuring the court's discretion, criteria for publication in the official reports of an opinion of the court include whether the opinion: 1 .... modifies, clarifies or criticizes an existing rule....").

Officer Viera that the pipe was not hot to the touch and that such a condition could mean that the pipe had not been used recently. Officer Viera reported that there was no other methamphetamine found in the front seat area, and that he could not remember if he recovered a lighter. Finally, the criminologist related that she "did not recover any loose methamphetamine to test[,]" and that she could not state how much of the .044 grams of substance was methamphetamine. Such evidence may have been sufficient to persuade a court, in the exercise of its discretion, that whatever methamphetamine contained in the residue weighed was not useable and, therefore, by inference, not saleable. In my view, depending upon the circumstances, a defendant need not necessarily produce an expert in pharmacology at court to meet the burden of establishing that the drug was not useable or saleable.

Dissenting Opinion by RAMIL, J.

For the reasons discussed in *State v. Carmichael*, 99 Hawai'i 75, 53 P.3d 214 (Hawai'i 2002), I respectfully dissent.