**STATE OF HAWAII**, Plaintiff–Appellee, v. **JAMES CHARLES MUNDELL**, Defendant–Appellant

NO. 14563

(CR. NO. 89–0123(1))

JULY 29, 1991

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE CRANDALL, ASSIGNED BY REASON OF VACANCY

612

OPINION OF THE COURT BY HEEN, J.

Defendant–Appellant James Charles Mundell (Defendant) appeals from his conviction, after a jury trial, of possession of cocaine, in violation of Hawaii Revised Statutes (HRS) § 712–1243 (1985),[1] and drug paraphernalia, in violation of HRS § 329–43.5(a) (Supp. 1990).[2] Judgment on the jury verdict was entered on June 8, 1990. We affirm.

---

[1] Hawaii Revised Statutes (HRS) § 712–1243 (1985) reads in pertinent part as follows:

**Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if he knowingly possesses any dangerous drug in any amount.

[2] HRS § 329–43.5(a) (Supp. 1990) reads as follows:

**Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

On April 5, 1989, Maui County Police Sergeant Robert Fernandez (Sgt. Fernandez) and other officers executed a warrant for the search of the residence of one Biff Casey (Casey). Shortly before executing the warrant, Sgt. Fernandez saw Defendant enter the residence. When Sgt. Fernandez entered the residence, five people were in the only useable room. The remainder of the residence was being renovated. Casey and a woman were seated on a sofa with Casey on the right. Defendant was seated on the floor to the right of the sofa near Casey. Another woman was seated on a chair across the room, and a man was seated on the floor near her. Sgt. Fernandez estimated the dimensions of the room to be 15 feet square.

On the floor, just behind Defendant and near the sofa, Sgt. Fernandez saw a purple Crown Royal bag (Bag).[3] Sgt. Fernandez picked up the Bag and asked the people present whose Bag it was. No one answered. Sgt. Fernandez then emptied the Bag onto the floor and found a "Toda Drug" pill container (pill container) bearing Defendant's name, a pack of cigarettes, some money, and the following: an eyedropper, a three foot cord, cotton swabs, a "straight–edge" razor, a short straw, a spoon and a plastic syringe. Sgt. Fernandez testified that, based on his experience, the items found in the Bag, except for the cigarettes, the money, and the pill container, were used in preparing or using drugs.

Sgt. Fernandez also recovered from the floor in front of and approximately a foot away from Defendant, a 35–mm film container containing white powder, and two paper bindles. The film container and the paper bindles tested positive for the presence of cocaine.

Defendant propounds several arguments on appeal, which we find without merit.

---

[3] A velvety bag with gold drawstrings in which individual bottles of Crown Royal whiskey are sold.

## I.

Defendant claims that the trial court erred in denying his pre–trial motion to suppress the contents of the Bag. He contends that, since the Bag was close to him and was "an obvious repository for personal effects," Sgt. Fernandez should have known that the Bag belonged to Defendant and, under *State v. Joyner*, 66 Haw. 543, 669 P.2d 152 (1983), Defendant's failure to claim ownership of the Bag did not justify the search. We disagree.

In *State v. Nabarro*, 55 Haw. 583, 525 P.2d 573 (1974), the supreme court held that the personal property of a non–resident of premises being searched under a search warrant is not subject to search. However,

> the police cannot realistically be expected to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership. Absent a requirement of such awareness, the effective execution of a warrant to search a place would be impossible since the police could never be sure that a plausible repository for items named in the warrant belongs to a resident, and hence is searchable, or to a non–resident, and hence is not searchable. Because of this, without notice of some sort of the ownership of a belonging, the police are entitled to assume that all objects within premises lawfully subject to search under a warrant are part of those premises for the purpose of executing the warrant.

*Id.* at 587–88, 525 P.2d at 576–77. In *Nabarro*, the owner of the purse that was searched clearly indicated that it was hers. Therefore, the supreme court held that the search of the bag was unlawful. Here, no one claimed ownership of the Bag.

Citing *Joyner, supra*, Defendant argues that Sgt. Fernandez erred in assuming, from Defendant's silence, that the Bag was part of the premises. *Joyner* is inapposite. In *Joyner*, the premises

searched was a public bath house, and the defendant was found in the sauna room with three other men. The brown vinyl athletic bag that was searched was "one to two feet away 'at most,' " *id.* at 545, 669 P.2d at 154, from the defendant, and some six to eight feet from the other three men. The supreme court held that the lower court's finding that there was indicia of the defendant's ownership of the brown vinyl athletic bag was not clearly erroneous and upheld the suppression of the drugs found therein.

Here, the Bag was found in Casey's residence, on the floor, just behind Defendant and to his left. The photographs and diagrams in evidence show the Bag was located towards the rear of the sofa on which Casey was seated, was at least as close to Casey as it was to Defendant, and was within easy reach of Casey.[4] In these circumstances, we are not convinced that Sgt. Fernandez was incorrect in assuming the Bag was part of the premises. Consequently, we find no error by the court in denying Defendant's motion to suppress.

## II.
### A.

We find no merit in Defendant's assertion that the lower court committed plain error in instructing the jury as follows:

> The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

> A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing,

---

[4] The photographs show a very messy room in which other containers that could be used as drug receptacles abounded.

either directly or through another person or persons, is then in constructive possession of it.

The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

You may find that the element of possession as that term is used in these instructions is present if you find beyond reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

The instruction (hereafter Instruction Fourteen) was given by agreement. Defense counsel did not request any instructions.

In essence, Defendant argues that the offenses he was charged with require him to have actual possession of the contraband on his person; that constructive possession is not sufficient to support the charge. Therefore, he contends, the instruction was improper and caused him to be convicted of an offense for which he was not charged. The question is one of construction of the word "possession" in HRS §§ 712–1243 and 329–43.5(a), *supra*.

The starting point in statutory construction is to determine the legislative intent from the language of the statute itself. HRS § 701–104 (1985); *State v. Briones*, 71 Haw. 86, 784 P.2d 860 (1989). Penal statutes are to be strictly construed. *State v. Burgo*, 71 Haw. 198, 787 P.2d 221 (1990). However, the strict construction rule does not permit the court to ignore legislative intent, nor require the court to reject that construction that best harmonizes with the design of the statute or the end sought to be achieved. *Id.* Additionally, the court will not construe a statute in a manner that will yield an absurd result. *Id.* The courts may resort to extrinsic aids in determining the legislative intent. *See Crawford v. Financial Plaza Contractors*, 64 Haw. 415, 643 P.2d 48 (1982).

Possession is not defined in the Hawaii Penal Code. However, Black's Law Dictionary defines the word as:

> The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name.

>         \*        \*        \*

> The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it. The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

BLACK'S LAW DICTIONARY 1163 (6th ed. 1990). Thus, the accepted legal definition of possession includes both actual and constructive possession as determined by actual physical control, i.e., actual possession, or the power and intention to exercise control, i.e., constructive possession.[5]

---

[5] In HRS § 702–202 (1985) the voluntariness of possession is described as follows:

> **Voluntary act includes possession.** Possession is a voluntary act if the defendant knowingly procured or received the thing possessed or if the defendant was aware of his control of it for a sufficient period to have been able to terminate his possession.

Since our statutes do not define "control," we again look to Black's Law Dictionary, *supra*, where it is defined as follows:

> Power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee.
>
> \*       \*       \*
>
> As used in statute making it unlawful for any person to possess or "control" any narcotic drug, is given its ordinary meaning, namely, to exercise restraining or directing influence over, and also has been defined to relate to authority over what is not in one's physical possession. *Speaks v. State*, 3 Md.App. 371, 239 A.2d 600, 604.

*Id.* at 329.

We find nothing in the penal code to indicate that the legislature intended to accord to the word possession anything other than its accepted legal definition.[6] It is clear to us that the legislature

---

[6] Defendant argues that HRS § 712–1251 (1985) demonstrates a legislative intent to require that a person actually possess narcotics on his person in order to violate the penal code prohibitions. We disagree.

HRS § 712–1251 reads as follows:

**Possession in a motor vehicle; prima facie evidence.** (1) Except as provided in subsection (2), the presence of a dangerous drug, harmful drug, or detrimental drug in a motor vehicle, other than a public omnibus, is prima facie evidence of knowing possession thereof by each and every person in the vehicle at the time the drug was found.

(2) Subsection (1) does not apply to:

(a) Other occupants of the motor vehicle if the substance is found upon the person of one of the occupants therein; or

(b) All occupants, except the driver or owner of the motor vehicle, if the substance is found in some portion of the vehicle normally accessible only to the driver or owner; or

(c) The driver of a motor vehicle who is at the time operating it for hire in the pursuit of his trade, if the substance is found in a part of the vehicle used or occupied by passengers.

intended to impose penal sanctions for constructive as well as actual possession of contraband items.

> The term "constructive possession" does not connote a legal fiction. Rather, the term simply reflects the common sense notion that an individual may possess a controlled substance even though the substance is not on his person at the time of arrest.

*United States v. Disla*, 805 F.2d 1340, 1350 (9th Cir. 1986). If the legislature intended to prohibit only actual possession, it could easily have done so. By not doing so, the legislature, in our view, manifested a clear intent to give the word possession its usual, broader meaning, as set forth above, rather than the narrow meaning argued for by Defendant. *See State v. Smith*, 59 Haw. 456, 583 P.2d 337 (1978).

Additionally, the broad meaning of possession is consonant with the legislative purpose of the penal statutes relating to drugs and intoxicating compounds. One purpose of this legislation is to penalize drug law offenders according to the potential for abuse and social harm involved in their activities, hitting hardest at illegal traffickers (those who either "possess large quantities of dangerous drugs, harmful or detrimental drugs or who distribute[] it in any amount"). Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1040; *see also* Commentary on HRS §§ 712–1241 to –1250. Thus, the legislature established a hierarchy of offenses based on

---

The supreme court has held that the rule established by HRS § 712–1251 may only be applied where the drugs found are in quantities usually possessed by drug-dealers, and permits, but does not require, an inference of guilt. *State v. Brighter*, 61 Haw. 99, 595 P.2d 1072 (1979).

HRS § 712–1251 only establishes an evidentiary rule that makes it easier for the prosecutor to prove possession of a drug found in a vehicle. It is a statute with limited application, enacted in recognition of the difficulty of proving possession in those cases where drugs are found in an automobile. *See* Commentary to HRS § 712–1251. It is not an expression of the legislative intent argued for by Defendant.

the amount and kind of drugs possessed. *See* HRS §§ 712–1241 to –1250 (1985 & Supp. 1990). This hierarchy indicates the legislature's determination of the possessor's position in the illegal drug stream. Larger amounts indicate the possessor is a main source of supply; lesser amounts indicate the possessor is a middle man between the main supply source and the consumer; the smallest amounts indicate the possessor is a consumer or user. Commentary to HRS §§ 712–1241 to –1250.

We take judicial notice that drug dealers and traffickers rarely carry "large" amounts of drugs on their person. Their supplies are generally secreted in their homes, in their luggage, or in other such places where they may be accessible for sale. Drug dealers often use other people to transport large quantities of drugs for them. Defendant's narrow definition would be destructive of the legislative intent to effectively control the problem of drug abuse, since it would make it almost impossible to prosecute traffickers who control large amounts of contraband but do not have the drugs on their person when arrested. Defendant's narrow definition would produce an absurd result.

### B.

HRS § 329–43.5(a), which Defendant was also convicted of violating, prohibits possession of drug paraphernalia, but, similarly to the penal code, does not define the word possession. We find nothing in the statute or its legislative history to indicate the legislature intended to apply the narrow definition espoused by Defendant.

### C.

Defendant also argues that, as an adjunct to Instruction Fourteen, the trial court should have instructed the jury that "mere proximity to the drug, mere presence, or mere association [with] the

person who does control the drug is insufficient to support a finding of possession."

As indicated in Part II. A., Instruction Fourteen correctly stated the law of possession. Although the legal proposition stated by Defendant is a correct statement of the law, we do not view its omission as plain error. In *People v. Cummings*, 171 Mich. App. 577, 430 N.W.2d 790 (1988), it was held that no manifest injustice occurred when the trial court failed to give, *sua sponte*, a mere presence instruction since, taken as a whole, the instructions adequately informed the jury of applicable law.

Additionally, in *State v. Lane*, 56 Wash. App. 286, 786 P.2d 277 (1989), the appellate court held that the trial court did not err when it refused to instruct the jury in language similar to that proposed here by Defendant. The appellate court noted that the defendant in *Lane* was able to argue to the jury that it should not convict him on account of his mere proximity to the drugs. Defendant argued to the jury in closing that the fact that the bindles and the film container were within his reach did not prove Defendant's guilt beyond a reasonable doubt.

## III.

Defendant argues that the evidence was insufficient to support his conviction. We disagree.

As we have noted, possession may be actual or constructive. The State did not prove actual possession. The question is whether the evidence was sufficient for the jury to find constructive possession.

The standard in determining the sufficiency of the evidence, viewing the evidence in the light most favorable to the State, " 'is not whether guilt is established beyond a reasonable doubt, but whether there is substantial evidence to support the conclusion of the trier of fact.' " *State v. Pineda*, 70 Haw. 245, 250, 768 P.2d

239, 242 (1989) (quoting *State v. Tamanaha*, 46 Haw. 245, 251, 377 P.2d 688, 692 (1962)).

To support a finding of constructive possession the evidence must show "a sufficient nexus between the accused and the drug to permit an inference that the accused had both the power and the intent to exercise dominion and control over the drug." *State v. Fox*, 709 P.2d 316, 319 (Utah 1985). Mere proximity is not enough. *State v. Garza*, 112 Idaho 778, 735 P.2d 1089 (1987); *State v. Spruell*, 57 Wash. App. 383, 788 P.2d 21 (1990); *State v. Hagen*, 55 Wash. App. 494, 781 P.2d 892 (1989). As outlined below, close review of the record indicates the evidence is sufficient to support the inference of constructive possession.

The bindles and film container were located just in front of Defendant where he sat on the floor. They contained cocaine. The Bag was located behind Defendant within his reach. From the pill bottle bearing Defendant's name, the jury could infer that the Bag and its contents belonged to him. The spoon, which bore burn marks, and the syringe, which had a little liquid on its tip, both tested positive for trace amounts of cocaine. Sgt. Fernandez observed what appeared to be a puncture wound on Defendant's forearm similar to those generally found on the forearms of drug users. Liquid was oozing from the puncture wound. None of the other people in the room had similar puncture wounds or "marks." In its most favorable light for the State, the evidence justifies an inference that Defendant had taken cocaine from the film container or the bindles, used the spoon to prepare the cocaine for injection, and injected the cocaine into his forearm with the syringe. In other words, the evidence justified the jury's inference that Defendant knowingly possessed cocaine and the drug paraphernalia.

## IV.

Based on the foregoing discussion, Defendant's argument that his attorney failed to accord him effective assistance of counsel is utterly without basis.

Affirmed.

*Kyle Butler Coffman* (*Susan Barr* on the briefs) for defendant–appellant.

*James B. Takayesu*, Deputy Prosecuting Attorney, County of Maui, for plaintiff–appellee.