282 P.3d 560

**STATE of Hawai'i, Respondent/Plaintiff–Appellant,**

v.

**Raymond L. FOSTER, also known as "Ray," Petitioner/Defendant–Appellee.**

**No. SCWC–29799.**

Supreme Court of Hawai'i.

July 31, 2012.

Cynthia Kagiwada, for petitioner.

Richard K. Minatoya and Renee Ishikawa Delizo for respondent.

RECKTENWALD, C.J., NAKAYAMA, and McKENNA, JJ., and Circuit Judge LEE, In Place of DUFFY, J., Recused; with ACOBA, J., Concurring Separately.

**Opinion of the Court by NAKAYAMA, J.**

In this case we hold that mere proximity and power to exercise control over contraband are insufficient to sustain a conviction for possession absent evidence of intent. Petitioner/Defendant–Appellee Raymond L. Foster was found guilty by a jury of, *inter alia,* one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition. Following the jury verdict, the Circuit Court of the Second Circuit[1] granted Foster's renewed motion for judgment of acquittal on those two counts, concluding that the evidence adduced at trial did not establish that Foster had the requisite intent to exercise dominion and control over the subject firearm and ammunition. On appeal by Respondent/Plaintiff–Appellant State of Hawai'i, the Intermediate Court of Appeals ("ICA") concluded that there was sufficient evidence of intent, vacated the circuit court's order granting Foster's renewed motion for judgment of acquittal, and remanded for resentencing based on the jury's guilty verdicts. We accepted Foster's application for writ of certiorari to consider his contention that the ICA's decision was inconsistent with the law of constructive possession in this jurisdiction, and we now conclude that the ICA erred in vacating the circuit court's order granting Foster's renewed motion for acquittal of both the firearm and ammunition charges. In light of the countervailing evidence in the record demonstrating that the firearm and ammunition were in the possession of Foster's passenger

---

1. The Honorable Joel E. August presided.

Phillip Malano, we hold that Foster's ownership of the vehicle involved and his proximity to the items at the time of arrest were, without more, insufficient to establish his intent to exercise dominion and control over the items and thus his constructive possession of them. Accordingly, we vacate the judgment of the ICA and reinstate the circuit court's order granting Foster's renewed motion for judgment of acquittal of the firearm and ammunition charges.

## I. BACKGROUND

### A. Factual Background

At around 2:05 a.m. on August 27, 2006, Department of Land and Natural Resources ("DLNR") conservation enforcement officers Larry Pacheco and John Yamamoto were patrolling for illegal night hunting on the Pi'ilani Highway, located in the County of Maui. At that time, Pacheco and Yamamoto were driving toward the remote Kaupo area and saw a vehicle coming from that direction, as well as "a bright strong light moving back and forth, which might be an indicator of night hunting." Pacheco and Yamamoto used their DLNR vehicle to block the lane of travel heading back toward town and flagged down the vehicle, "a white two-door Toyota 4Runner[,]" as it approached; it stopped approximately twenty to twenty-five yards in front of them. The officers then approached the vehicle, and Yamamoto "heard a sound like a hunting rifle type slide chamber." There were four people in the 4Runner: Foster in the driver's seat, Malano in the front passenger seat, Wendy Gonsalves in the rear on the driver's side, and Malia Saunders in the rear on the passenger's side. Pacheco approached the 4Runner on the passenger's side and "saw an ammunition clip [i]n the center between the driver and passenger on the seat." Pacheco and Yamamoto then ordered all four people out of the 4Runner;

Pacheco handcuffed Foster and conducted a pat down search but did not find any ammunition on Foster's person.

In order for the rear seat passengers to exit the 4Runner, Yamamoto slid the front passenger seat forward; at that time he observed a rifle "on the floor panel fronting Malia Saunders." Pacheco also testified that the rifle "was on the floor panel of the foot area fronting Saunders, and it was not under the front passenger's seat." During the stop, Pacheco also confirmed that Foster was the registered owner of the 4Runner and that Malano had an outstanding arrest warrant.

Foster agreed to make a statement to Pacheco after being advised of and waiving his constitutional rights. Foster said that he picked up Malano earlier in the evening and that Malano had a black ukulele case with him. The two men then picked up Saunders and Gonsalves and headed toward Kaupo. In the Kanaio area, "Malano needed to take a break, and Foster pulled over on the side of the road." Malano then got out of the vehicle, took a rifle from the ukulele case,[2] and fired several rounds. After Malano got back in the 4Runner, they started driving back toward town.

Foster and Malano were arrested by the Maui Police Department ("MPD") officers whom Pacheco and Yamamoto had called for assistance, and Saunders and Gonsalves were released. Saunders and Gonsalves were interviewed by MPD Officer Kenneth Doyle the next day and, after being advised of their constitutional rights, both gave verbal and signed written statements.

The Maui grand jury returned an indictment on September 1, 2006, charging Foster with committing, *inter alia*,[3] the offenses of Ownership or Possession Prohibited of Any Firearm, in violation of Hawai'i Revised Statutes (HRS) § 134–7(b) and/or (h), and Own-

---

**2.** According to the record, the rifle was a MAK–90 semiautomatic assault rifle. Counsel for the State noted at oral argument that the rifle would probably fit in a typical ukulele case.

**3.** Foster was also charged with several drug offenses. The circuit court granted the State's motion to dismiss some of those charges, and Foster was convicted of the remaining charges. Foster appealed his conviction on those remain-

ing drug charges based on the circuit court's denial of his motion to suppress evidence obtained by Pacheco and Yamamoto during the stop, and the ICA affirmed. *State v. Foster*, No. 30039, 125 Hawai'i 252, 258 P.3d 949, 2011 WL 3848009 (App. Aug. 31, 2011) (SDO). An application for writ of certiorari was not filed in No. 30039.

ership or Possession Prohibited of Firearm Ammunition, in violation of HRS § 134–7(b) and/or (h).[4] Jury trial commenced on January 12, 2009.

## B. Relevant Trial Proceedings

After the State's case in chief, which consisted of testimony from DLNR Officers Pacheco and Yamamoto, MPD Officer Doyle, and MPD Sergeant Barry Aoki,[5] Foster moved orally for judgment of acquittal as to the firearm and ammunition charges. The court denied the motion but indicated that "certainly there are some questions with regard to the charges regarding the weapon itself." Both Saunders and Gonsalves chose not to testify, asserting their Fifth Amendment rights against self-incrimination; the court then allowed defense counsel to read portions of their written statements into evidence. According to the portions of these statements read into evidence, the four people in the 4Runner "were smoking ice and marijuana" and Malano was loading bullets into the ammunition clip; at some point they stopped, and Malano got out of the 4Runner and shot at a junk car[6] on the side of the road; Gonsalves "was loading the gun at one point when [Malano] was loading the clip"; later, upon being stopped by the DLNR officers, Malano threw the rifle to the back seat and it landed on Saunders's lap; and Saunders and Gonsalves then kicked the gun to the floor. Foster did not testify. The defense then introduced into evidence Malano's judgment, conviction, and sentence arising out of the same incident, and the court took judicial notice that Malano was found guilty of possessing the same items that Foster was

charged with possessing in this case. The defense then rested.

During jury deliberations, the jury communicated the following question to the court: "Is possession determined by just being present with the object? Doesn't there have to be connection to that object by way of use or intent to use?" The court responded by referring the jury to Jury Instruction Number 25, which read in full:

A person is in possession of an object if the person knowingly procured or received the thing possessed, or was aware of his control of it for a sufficient period of time to have terminated his possession.

The law recognizes two kinds of possession, actual possession and constructive possession. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing for a sufficient period of time to terminate his possession of it, either directly or through another person or persons, is then in constructive possession of it.

The fact that a person is near an object or is present or associated with a person who controls an object, without more, is not sufficient to support a finding of possession.

The law requires also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

The element of possession has been proved if you find beyond a reasonable doubt that the defendant had actual or

---

4. HRS § 134–7 (Supp.2005) provided then, as it does now, in pertinent part:

    (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

    . . .

    (h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. . . .

Prior to trial, the parties stipulated that Foster had a prior felony conviction as of August 27, 2006.

5. Sergeant Aoki only testified that he was responsible for test firing the rifle recovered from the 4Runner. The State also called MPD Criminalist Julie Wood and MPD Evidence Custodian Kalaokana Akana to testify; their testimony was pertinent only to the drug charges.

6. Photographs taken during the day following the stop show that Malano had actually shot at an abandoned boat on the side of the road.

constructive possession, either solely or jointly with others.

On January 22, 2009, the jury found Foster guilty as charged of the firearm and ammunition charges. On February 2, 2009, Foster renewed his motion for judgment of acquittal as to those charges. On February 11, 2009, the circuit court held a hearing and granted the motion, concluding that there was insufficient evidence to conclude that Foster had the intent to exercise dominion or control over either the firearm or the ammunition, even though the evidence did show that Foster had *knowledge* of the items and power to exercise dominion or control over them. As relevant to the State's appeal and Foster's application, the court stated:

It appears that the State did offer substantial evidence to show that the defendant had the power and ability to exercise control or dominion over the firearm. Firearm was in close proximity of the defendant and was found in the back seat of his vehicle. However, mere proximity to a prohibited item time [sic] is not sufficient to establish possession. The State must establish that the defendant had the intent to possess the firearm.

The [c]ourt find[s] there was not sufficient evidence in the record even when drawing all inferences in the prosecution's favor indicating that the defendant had the necessary intent to exercise control and dominion over the firearm.

The [s]tatements of defendant's cohorts Ms. Gongsalves [sic] and Saunders and other circumstantial evidence adduced at trial do not provide a basis for inferring defendant's state of mind with regard to the firearm. Accordingly, the [c]ourt's going to grant defendant's post-trial motion for judgment of acquittal regarding count five having to do with the firearm.

State offered evidence showing that the ammunition [w]as located in the front passenger area of the vehicle between defendant and Malano. And I don't think, quite frankly, there was much dispute about that.

The officer, when he shined his flashlight in, did indicate where that was located. Although the ammunition was found closer to defendant's person than the firearm, defendant's closer proximity to the ammunition in and of itself does not compensate for the [in]sufficient evidence in the record with regard to defendant's intent to exercise dominion and control over the ammunition even though there was evidence that he had the power and ability to do so.

In the [c]ourt's view, the most reasonable inference which a juror could have made based upon the combined statements of the female passengers and the testimony of the DLNR officer who heard the distinct sound of the slide of the rifle as they approached, was that Malano immediately prior to the interception by the officer used the slide to remove the clip, and then put it beside him when he threw the weapon in the back seat.

The [c]ourt finds that the State has failed to come forward with substantial evidence such that a reason[able] mind might conclude that defendant had both the power and intention to exercise dominion and control over the ammunition as well. And, therefore, the [c]ourt is going to grant defendant's motion for judgment of acquittal with regard to count six.

The circuit court entered its Findings of Fact, Conclusions of Law and Order Granting Defendant Raymond Foster's Renewed Motion for Judgment of Acquittal on April 2, 2009, and the State filed its Notice of Appeal on May 1, 2009 pursuant to HRS § 641–13(9).[7]

### C. The ICA's October 18, 2011 Summary Disposition Order

On appeal to the ICA, the State argued that the circuit court erred as a matter of law in granting the post-trial motion for judg-

---

7. HRS § 641–13 (Supp.2008) provided then, as it does now, in pertinent part:
   An appeal may be taken by and on behalf of the State from the district or circuit courts to the intermediate appellate court, subject to

chapter 602, in all criminal matters, in the following instances:

. . .

(9) From a judgment of acquittal following a jury verdict of guilty[.]

ment of acquittal by (1) disregarding the applicable standard of review for such motions and by (2) disregarding the applicable law on constructive possession.

With regard to the first point, the State argued that by granting the renewed motion for judgment of acquittal after the jury had found Foster guilty on the firearm and ammunition charges, the circuit court essentially usurped the province of the jury "by disregarding the province of the fact finder to assess the credibility of the witnesses, weigh the evidence, and draw justifiable inferences of fact." (Citing *State v. Timoteo*, 87 Hawai'i 108, 112–13, 952 P.2d 865, 869–70 (1997)). Significantly, the State noted that when Foster initially moved for judgment of acquittal after the State rested, the circuit court denied that motion after finding that the evidence presented, "considered in the light most favorable to the State and with deference to the right of the jury to assess the credibility of the officers, ... was sufficient for a *prima facie* case." Although Foster did not argue against the State on this issue, the ICA nevertheless concluded that the circuit court did not "usurp the province of the jury" in granting the renewed post-verdict motion because Hawai'i Rules of Penal Procedure (HRPP) Rule 29(c) expressly allows the circuit court to grant a motion in that situation.[8] *State v. Foster*, No. 29799, 125 Hawai'i 380, 262 P.3d 669, 2011 WL 4953400, at *1 (App. Oct. 18, 2011) (SDO). This point has not been further argued to this court.

With regard to the second point, the State argued that the circuit court erred by finding that the State had not proven that Foster was in possession of a firearm. Specifically, the State argued that, according to the analysis for possession set out by this court in *State v. Jenkins*, 93 Hawai'i 87, 111–12, 997 P.2d 13, 37–38 (2000), the voluntary act of possession can "be established by the defendant's awareness of his or her control of that

object for a sufficient period to have terminated possession." According to the State, "the facts established that Foster was aware of the rifle and the ammunition in his vehicle and had power and ability to exercise dominion and control for a sufficient period of time, and his failure to terminate possession thereof satisfied the *Jenkins* test for possession." Thus, as the State argued, the circuit court erred by granting Foster's motion of acquittal on the ground that he lacked the intent to exercise dominion or control over the rifle and the ammunition.

In response, Foster argued that the State had not presented any evidence to satisfy the element of intent for constructive possession. As a threshold matter, mere proximity to the item is insufficient to establish constructive possession, so the evidence of ammunition found on the front seat and the rifle found in the rear passenger area was insufficient as a matter of law to show intent to possess. (Citing *State v. Brown*, 97 Hawai'i 323, 326, 37 P.3d 572, 585 (App.2001); *State v. Moniz*, 92 Hawai'i 472, 476, 992 P.2d 741, 745 (App. 1999)). Similarly, Foster argued that the State's reliance on his ownership of the 4Runner was also inadequate because "the defendant's ownership or right to possession of the place where the [items] were found, alone, [is] insufficient to support a finding of the exercise of dominion and control." (Quoting *Moniz*, 92 Hawai'i at 476–77, 992 P.2d at 745–46) (second brackets added; internal quotation marks omitted). Moreover, although the State had presented evidence showing Foster's knowledge of the rifle and ammunition inside the 4Runner and the evidence suggested that Foster had the power to exercise dominion and control over the items, there was an absence of evidence showing that Foster had intent to exercise dominion and control. Foster specifically argued that "knowledge alone is insufficient to demonstrate intent." (Citing *Moniz*, 92 Ha-

---

8. HRPP Rule 29(c) provides:

Motion after discharge of duty. If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 10 days after the jury is discharged or within such further time as the court may fix during the 10-day period. *If a verdict of guilty* *is returned the court may on such motion set aside the verdict and enter judgment of acquittal.* If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

(Emphasis added).

wai'i at 476–77, 992 P.2d at 745–46). Foster also argued that it was not error for the circuit court to deny his initial motion for acquittal but grant his post-verdict motion for the same. According to Foster, this is because the circuit court focused on the issue of Foster's knowledge in the initial motion but then properly directed its attention to the issue of intent in the renewed motion and properly concluded that the State failed to adduce any evidence as to intent. Finally, Foster argued that the State misinterpreted the requirements of *Jenkins* by arguing "that it only needed to show that[ ] Foster was aware of the rifle and the ammunition in his vehicle for a sufficient period of time to terminate possession." In Foster's view, acceptance of the State's argument "would allow the prosecution to prove constructive possession based on mere knowledge of the firearm or ammunition alone." Instead, Foster maintained that the State must affirmatively prove possession by establishing that the defendant "had *both the power and the intent* to exercise dominion and control over the firearm or ammunition." (Citing *Jenkins*, 93 Hawai'i at 111, 997 P.2d at 37) (emphasis added). Foster concluded that because the State "failed to present any evidence that demonstrated Foster's intent to exercise dominion and control over either the rifle or the ammunition, the trial court properly granted Foster's motion for judgment of acquittal." (Citing *State v. Aplaca*, 96 Hawai'i 17, 21, 25 P.3d 792, 796 (2001)).

The ICA held that "there was substantial evidence to support Foster's convictions" on the firearm and ammunition possession charges. *Foster*, 2011 WL 4953400, at *1. The ICA based this conclusion on several facts and inferences: Foster's proximity to the rifle and the ammunition and his knowledge of that proximity; Foster's "ultimate control over who and what was allowed inside the vehicle as well as the activities occurring inside the 4Runner[,]" which signified that "Foster could have refused to let Malano back into the 4Runner with the rifle and ammunition[ ]"; and Foster's lack of fear of Malano and the absence of any threats from Malano, which was "circumstantial evidence of, at a minimum, Foster's willingness to assist Malano in the latter's activities involv-

ing use of the firearm and ammunition." *Id.* at *2. The ICA therefore concluded that "[u]pon viewing the evidence presented in the light most favorable to the State, there [wa]s sufficient evidence from which the jury could have reasonably concluded that Foster was a felon who intentionally possessed the subject rifle and ammunition in violation of HRS § 134–7(b)." *Id.* Accordingly, the ICA vacated the circuit court's April 2, 2009 order and remanded the case for resentencing based on the jury's guilty verdicts. *Id.* The ICA then filed its judgment on appeal on November 10, 2011.

Foster timely filed his application for writ of certiorari on February 8, 2012. The State filed a timely response to the application on February 23, 2012.

## II. STANDARD OF REVIEW

### A. Motion for Judgment of Acquittal

■ When reviewing a post-verdict motion for judgment of acquittal, we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged. Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

*Timoteo*, 87 Hawai'i at 112–13, 952 P.2d at 869–70 (quoting *State v. Jhun*, 83 Hawai'i 472, 481, 927 P.2d 1355, 1364 (1996)) (citations and internal quotation marks omitted).

## III. DISCUSSION

Foster's application to this court raises a single question: whether the ICA's decision vacating the circuit court's order granting his motion for judgment of acquittal is obviously inconsistent with decisions of this court, the ICA, and federal courts related to constructive possession of contraband because it is based primarily on Foster's proximity to the contraband and his status as owner and driver of the 4Runner. Based on the analysis that follows, we conclude that the ICA erred in holding that the State presented sufficient evidence of Foster's intent to exercise dominion and control over the firearm and ammunition to enable the jury to reasonably infer that Foster constructively possessed those items.

### A. The Law of Constructive Possession in the State of Hawai'i

It is a settled matter of Hawai'i law that possession of an item may be either actual or constructive:

The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion over a thing, either directly or through another person or persons, is then in constructive possession of it.

*Jenkins*, 93 Hawai'i at 110, 997 P.2d at 36 (quoting *State v. Mundell*, 8 Haw.App. 610, 617, 822 P.2d 23, 27 (1991) (quoting Black's Law Dictionary 1163 (6th ed.1990))) (emphases removed; other citations omitted); *cf. State v. Opupele*, 88 Hawai'i 433, 439, 967 P.2d 265, 271 (1998) ("The correctness of [the foregoing definition], as a general definition of possession, is not in dispute.").

In *Jenkins*, this court clarified the state of mind required to establish possession of an item and set out a two-prong analysis for determining the voluntariness of "possession" under HRS § 134-7(b):

(1) the voluntary act of "possession" of an object *itself* is, by way of HRS § 702-202, satisfied where an individual acts knowingly with respect to his or her conduct; and (2) the requisite state of mind with respect to the attendant circumstances—*i.e.,* the particular qualities of the object that make it illegal to possess it—is, by way of HRS § 702-204, satisfied by a reckless state of mind.

93 Hawai'i at 111, 997 P.2d at 37 (emphases in original). Thus, to meet the first part of the test, "the prosecution must first adduce evidence that the defendant knowingly procured or received an object, or was aware of his or her control of that object for a sufficient period to have terminated possession." *Id.* (citing HRS § 702-202). To meet the second part, "the prosecution must, at the very least, adduce evidence that the defendant possessed the object in reckless disregard of the substantial and unjustifiable risk that it was a firearm." *Id.* (citing HRS § 702-204).

Where actual possession of the item is not at issue, the State must prove a sufficient nexus between the defendant and the item in order to establish constructive possession of the item: "To support a finding of constructive possession the evidence must show a sufficient nexus between the accused and the [item] to permit an inference that the accused had both the power and the intent to exercise dominion and control over the [item]. Mere proximity is not enough." *Moniz*, 92 Hawai'i at 476, 992 P.2d at 745 (quoting *Mundell*, 8 Haw.App. at 622, 822 P.2d at 29 (citations omitted)) (brackets added and internal quotation marks omitted); *see also Brown*, 97 Hawai'i at 336, 37 P.3d at 585 (same). *Moniz* further established that

[p]roof of the defendant's knowledge of the presence of [the items] and the defendant's ownership or right to possession of the place where the [items] were found, alone, are insufficient to support a finding of the exercise of dominion and control. Other incriminating circumstances must be present to buttress the inference of knowing possession and provide the necessary link between a defendant and illegal [items].

92 Hawai'i at 476–77, 992 P.2d at 745–46. This court has also since noted that it "is

correct that mere proximity to the [item], mere presence, or mere association with the person who does control the [item] is insufficient to support a finding of possession." *State v. Hironaka,* 99 Hawai'i 198, 206, 53 P.3d 806, 814 (2002) (quoting *Mundell,* 8 Haw.App. at 620, 822 P.2d at 29) (brackets added and brackets removed; internal quotation marks omitted).

### B. Foster Had Knowledge of the Firearm and Ammunition and Power to Exercise Dominion and Control over Them

Here, it is undisputed that Foster knew that the rifle was inside the 4Runner, at least as of the time that Malano removed the rifle from the ukulele case to shoot at the abandoned boat on the side of the road. It is also undisputed that at the time the DLNR officers stopped the 4Runner, Foster had the power to exercise dominion and control over the rifle and the ammunition given the presence of those items inside the 4Runner and Foster's proximity to them. However, even if knowledge and proximity are conclusively established, intent cannot be thereby presumed. "[A]lthough [Foster] most certainly knew of the existence of the items and their potential for illegal use, knowledge and ability to possess do not equal possession where there is no evidence of intent to make use of that knowledge and ability." *Moniz,* 92 Hawai'i at 479, 992 P.2d at 748 (quoting *Spanish Fork City v. Bryan,* 975 P.2d 501, 503 (Utah App.1999)) (brackets added and brackets removed; emphasis removed). That is, intent to exercise dominion and control over the items must thus be proven in addition to knowledge of the items and power to exercise dominion and control over them.

### C. The Evidence Does Not Support the Inference That Foster Had the Intent to Exercise Dominion and Control over the Firearm and Ammunition

As noted *supra,* to establish constructive possession of an item, intent to exercise do-minion and control over it must be shown in addition to knowledge of the item and the power to exercise dominion and control. As the ICA stated in *Moniz,* "[o]ther incriminating circumstances" beyond knowledge of the item, the defendant's proximity to the item, or the defendant's ownership of or right to possess the place where the item is found, "must be present to buttress the inference of knowing possession and provide the necessary link between a defendant and illegal [items]." *Moniz,* 92 Hawai'i at 477, 992 P.2d at 746. The ICA has discussed the principles of constructive possession in some depth in two cases; we conclude that the present case is analogous to *Moniz* and distinguishable from *Brown.*[9]

*Moniz* involved constructive possession of marijuana and a scale containing methamphetamine residue found inside the apartment belonging to defendant-appellant Juliet Moniz and her husband, defendant Richard Moniz. *Id.* at 474, 992 P.2d at 743. Juliet was found guilty of the charges relating to the marijuana and the scale, but not guilty of a separate charge for the methamphetamine residue. *Id.* at 475, 992 P.2d at 744. On appeal, the ICA reversed Juliet's conviction, holding that she had the power but not the intent to possess the marijuana and the scale. *Id.* at 477, 478, 992 P.2d at 746, 747. Because Juliet and Richard lived together in the apartment, the ICA began by noting that it is more difficult to conclude that constructive possession exists "in cases such as this one, where a defendant does not have exclusive possession or control of the place where drugs are found and no drugs are found on the defendant's actual person." *Id.* at 476, 992 P.2d at 745. The ICA concluded that the power requirement was met with respect to the marijuana because it "was found in a drawer in the bedroom dresser that Juliet shared with Richard[,]" because "Juliet

---

9. This court has not yet decided a constructive possession case based on whether power and intent to possess have been proven by the State. In *Jenkins,* we vacated the defendant's conviction and remanded for a new trial based in part on our clarification of the state of mind required to establish possession of an item. *Jenkins,* 93 Ha-wai'i at 115, 997 P.2d at 41. Shortly thereafter, in *Valentine,* we vacated in part the defendant's conviction and remanded in order that the jury could be given new instructions pursuant to *Jenkins. State v. Valentine,* 93 Hawai'i 199, 210, 998 P.2d 479, 490 (2000).

washe[d], fold[ed], and put[ ] the clothes away and ... would see anything in the drawer[,]" because "the marijuana had been in the dresser drawer for two months" at the time of her arrest, and because she "admitted that she had seen the marijuana in the drawer and knew what it was[.]" *Id.* at 477, 992 P.2d at 746. With respect to the scale, although Juliet denied knowledge of its presence, Richard testified that Juliet may have come into contact with the scale in the process of cleaning the apartment. *Id.* at 478, 992 P.2d at 747. Further, Richard "admitted that he used the scale to weigh the drugs he sold and bought and that Juliet knew that he used and sold drugs and that some of the money he was giving her each month was from his drug sales." *Id.* Thus, the ICA concluded that "a reasonable jury could conclude that Juliet ... was aware of the existence of the scale and its use by Richard for illegal purposes." *Id.* As to the intent requirement, however, the ICA determined that there was "insufficient evidence." *Id.* at 477, 992 P.2d at 746. As for the marijuana, "Richard and Juliet both testified that Juliet strongly opposed Richard's use of drugs, did not procure the marijuana, and never smoked marijuana." *Id.* Additionally, Juliet testified that she could not even have disposed of the marijuana because it was Richard's, and "if [he] cannot find it, he going get mad." *Id.* As for the scale, it was found in a bucket along with Richard's driver's license but none of Juliet's belongings; also, "there [wa]s no evidence in the record that Juliet intended to use the scale for any of the following prohibited purposes listed in HRS § 329–43.5(a)[.]"[10] *Id.* at 478, 992 P.2d at 747. As a result, the lack of evidence to support Juliet's intent to exercise dominion and control over the marijuana and the scale necessitated reversal of her conviction on those counts. *Id.* at 480, 992 P.2d at 749.

In *Brown*, the defendant was convicted of, *inter alia*, possession of burglar's tools and unauthorized control of a propelled vehicle.

97 Hawai'i at 325, 37 P.3d at 574. On appeal, Brown argued that "the State failed to adduce substantial evidence that he 'constructively possessed the burglar's tools' that were found in a backpack on the floorboard near the front passenger's seat of the van." *Id.* at 326, 37 P.3d at 575. The ICA disagreed with Brown and affirmed his conviction and sentence based on its conclusion that there was substantial circumstantial evidence to establish Brown's intent to possess the burglar's tools. *Id.* at 340, 37 P.3d at 589. According to the ICA's opinion, the facts showed that at the time of Brown's arrest, the van in question had been reported stolen, it was not moving because it had "crashed into [a] wall," "only the driver's and front passenger's doors were open," and "Brown was found on the ground in front of the van on the driver's side," leading to the inference that Brown had been driving the stolen van until it crashed into the wall. *Id.* at 334, 37 P.3d at 583. Further, the evidence showed that "[t]he backpack was on the floorboard near the front passenger's seat, open and within Brown's reach, with a pair of bolt cutters visibly sticking out of the backpack." *Id.* at 337, 37 P.3d at 586 (citation omitted). Because the van "had just recently been stolen from NF, which testimony indicated was a seafood distributor, the jury could reasonably infer that the backpack containing the tools had not been placed in the van by any employee of NF, but by Brown or the other passenger in the stolen van." *Id.* Although it was likely according to the evidence that the backpack was located closer to the front passenger, the ICA noted that "Hawai'i recognizes that two or more persons can be in joint possession of an item[,]" *id.* (citing *Mundell*, 8 Haw.App. at 617, 822 P.2d at 27), and that "[w]here two co-conspirators are engaged in a joint criminal activity, possession by one of the tools to further the criminal activity will be imputed to the other." *Id.* (citing *Solomon v. State*, 180 Ga.App. 636,

---

10. HRS § 329–43.5(a) (1993) provided then, as it does now, in pertinent part:

It is unlawful for any person to use, *or to possess with intent to use*, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter....

(Emphasis added).

350 S.E.2d 35, 36 (1986); *Franklin v. Commonwealth*, 477 S.W.2d 788, 791 (Ky.1972)).

In this case, as in *Moniz*, there is no dispute that Foster knew that the firearm and the ammunition were inside the 4Runner, and it could be inferred by rational jurors that Foster had the power to exercise dominion and control over those items based on his proximity to them inside the vehicle. However, Foster's knowledge of and power over the items did not provide a sufficient nexus between him and the items to prove possession in the absence of intent to exercise dominion and control over the items; intent is a separate requirement that must be proven in addition to knowledge and power. Here, as in *Moniz*, the State failed to present any evidence that Foster had the intent to exercise dominion and control over the firearm and the ammunition. As that lack of evidence could not have permitted a reasonable juror to make the inference that Foster was in constructive possession of the firearm and ammunition, the ICA thus erred in vacating the circuit court's order by concluding that "there was substantial evidence to support Foster's convictions[.]" *Foster*, 2011 WL 4953400, at *1.

"To support a finding of constructive possession the evidence must show a sufficient nexus between the accused and the [object] to permit an inference that the accused had both the *power* and the *intent* to exercise dominion or control over the [object]. Mere proximity is not enough." *Id.* (quoting *Brown*, 97 Hawai'i at 336, 37 P.3d at 585) (brackets and emphases in original; internal quotation marks omitted). As the ICA stated, "[t]he undisputed facts in the record reveal that Foster had knowledge that the rifle and ammunition were in proximity to him in the vehicle . . . ." *Id.* at *2. However, according to the evidence adduced at trial, the rifle belonged not to Foster but to Malano; Malano entered the 4Runner with the rifle, and at that time it was inside a black ukulele case and hidden from view; Malano retained control over the rifle from the time he entered the 4Runner until the DLNR officers stopped the 4Runner; at no time did Foster show any interest in, handle, or attempt to handle the rifle; only Malano and Gonsalves

handled bullets in order to load them into the ammunition clip and into the rifle; and the rifle was discovered on the floor of the vehicle between the front passenger seat and rear passenger seat only because Malano had thrown the rifle back to Saunders, who then kicked it to the floor. None of this evidence suggested that Foster exercised, or intended to exercise, any control over the rifle or that Foster was directing Malano's use of the rifle.

Furthermore, the record does not demonstrate that the rifle was used in furtherance of criminal activity as contemplated by *Brown*. We also note that there was insufficient evidence in the record to suggest a joint venture and/or an agreement between Foster and Malano to go deer hunting or shooting for pleasure in that remote area of Maui. *Cf. Brown*, 97 Hawai'i at 337–38, 37 P.3d at 586–87 (imputing criminal liability for constructive possession where there was substantial evidence that the defendant and his passenger were engaged in joint criminal activity). Although Foster's 4Runner was stopped by Pacheco and Yamamoto because it was the first vehicle to approach after they noticed the light panning and blocked the townbound lane of the highway, the officers did not subsequently discover any light source on or in the car consistent with the panning they had just observed. Officer Yamamoto also testified that the subject rifle in this case is not of a type commonly used for hunting, and MPD Sergeant Aoki testified that it "can be" but is "[n]ot typically[ used for hunting activity.]" Moreover, while the trial testimony does not specifically address whether other hunting equipment was present in the 4Runner, the State conceded at oral argument that there was no evidence of the 4Runner containing any equipment or materials for hunting.

The ICA also stated that Foster's intent to have dominion and control over the rifle and ammunition could be inferred by the fact that

> Foster willingly and intentionally allowed Malano to re enter the 4Runner with the rifle and ammunition after Foster knew that Malano was carrying a working rifle and ammunition. As the driver and owner

of the 4Runner, Foster had ultimate control over who and what was allowed inside the vehicle as well as the activities occurring inside the 4Runner. Foster could have refused to let Malano back into the 4Runner with the rifle and ammunition. *Foster,* 2011 WL 4953400, at *2. However, control, possession, or even ownership of a place is not itself sufficient "to support a finding of the exercise of dominion and control." *Moniz,* 92 Hawai'i at 477, 992 P.2d at 746. As the United States Court of Appeals for the Fifth Circuit aptly stated in a case cited by Foster in his application, "when two or more people are occupying a place, a defendant's control over the place is not by itself enough to establish constructive possession of contraband found there." *United States v. Crain,* 33 F.3d 480, 486 (5th Cir. 1994). The same court earlier stated, in another case cited by Foster: "Thus, while dominion over the vehicle certainly will help the government's case, it alone cannot establish constructive possession of a weapon found in the vehicle, particularly in the face of evidence that strongly suggests that somebody else exercised dominion and control over the weapon." *United States v. Wright,* 24 F.3d 732, 735 (5th Cir.1994). Although these federal cases are not binding on this court, they are applicable to and instructive in the present case. Here, despite Foster's status as driver and owner of the vehicle in which the firearm and ammunition were found, no evidence beyond that status demonstrates that Foster had any intent to exercise dominion and control over the items; in fact, the evidence in the record only links the items to Malano (and Gonsalves, who at some point loaded a number of bullets into the rifle) from the time Malano entered the 4Runner until the time that the DLNR officers stopped the 4Runner later that night. Although "dominion over a vehicle in which a firearm is found can lead to an inference of constructive possession[,]" that inference fails in the face of "overwhelming countervailing evidence" linking the firearm to an-

other passenger. *Id.* That was the case in *Wright,* and that is the case here.

▬ Mindful that our standard of review of a motion for judgment of acquittal is the same as the trial court's, namely whether there is substantial evidence as to every material element of the offense as charged, we thus hold that the ICA erred in concluding that there was sufficient evidence of intent for a jury to infer that Foster thus constructively possessed the subject rifle and ammunition in violation of HRS § 134–7(b). As the *Crain* court stated: "We are especially reluctant to infer constructive possession of contraband by one occupant [of a vehicle] when there is evidence in the record explicitly linking the contraband to another occupant." 33 F.3d at 486 (citing *United States v. Mergerson,* 4 F.3d 337, 349 (5th Cir.1993)). Here, the State's evidence only went so far as to show Foster's ownership of and presence in the 4Runner and his proximity to the firearm and ammunition. Accordingly, absent evidence of intent, the circuit court correctly granted Foster's renewed motion for judgment of acquittal, and the ICA erred in vacating the circuit court's judgment.

## IV. CONCLUSION

Based upon the foregoing, we vacate the ICA's November 10, 2011 judgment and reinstate the circuit court's April 2, 2009 order granting Foster's renewed motion for judgment of acquittal.

Concurring Opinion by ACOBA, J.

I agree that the circuit court of the second circuit (the court) correctly granted the renewed motion for judgment of acquittal filed by Petitioner/Defendant–Appellee Raymond L. Foster (Petitioner).[1] However, I disagree with the majority's conclusion that under the Hawai'i Penal Code (HPC) Petitioner "had the power to exercise dominion and control over [the firearm and ammunition[.]" Majority opinion at 29, 282 P.3d at 571.

---

1. When reviewing a post-verdict motion for judgment of acquittal, the standard is whether, viewing the evidence in the light most favorable to the prosecution, the evidence is "sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *State v. Timoteo,* 87 Hawai'i 108, 112–13, 952 P.2d 865, 869–70 (1997) (citation omitted).

Petitioner was indicted and convicted of Ownership or Possession Prohibited of Any Firearm, Hawai'i Revised Statutes (HRS) § 134–7(b) and/or (h), and of Ownership or Possession of Prohibited Firearm Ammunition, HRS § 134–7(b) and/or (h). HRS § 134–7(b) and (h) (Supp.2005) provide in relevant part as follows:

> (b) No person who ... has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, *possess, or control any firearm or ammunition therefor* [²] ....
>
> (h) Any person violating subsection ... (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony....

(Emphasis added.)

As with any offense, a voluntary act is required under the HPC. HRS § 702–201 (1993). A " '[v]oluntary act' means a bodily movement performed consciously or habitually as the result of the effort or determination of the defendant." *Id.* But, as the HPC explains, "possession per se is not a bodily movement or an omission[.]" Commentary to HRS § 702–202. Nevertheless, the HPC makes "explicit that possession is a [voluntary act.]" *Id.* HRS § 702–202 (1993) defines possession as "a voluntary act if the defendant knowingly procured or received the thing possessed or if the defendant was aware of the defendant's control of it for a sufficient period to have been able to terminate the defendant's possession." HRS § 702–202.

Consequently, the relevant and precise definition of possession that should be applied in these circumstances is that which is set forth in the HPC. *State v. Moniz*, 92 Hawai'i 472, 480, 992 P.2d 741, 749 (App. 1999) (Acoba, J., concurring). Logically, inasmuch as a defendant's possession must be a voluntary act, an analysis as to whether a defendant was in "possession" of "any firearm or ammunition therefor[,]" HRS § 134–7(b), should proceed from the definition of possession under HRS § 702–202.³ *See State v. Auwae*, 89 Hawai'i 59, 62, 968 P.2d 1070, 1073 (App.1998), *overruled on other grounds by State v. Jenkins*, 93 Hawai'i 87, 997 P.2d 13 (2000) (holding that possession is a prosecutable act under HRS § 702–202).

In this case, the evidence indicates that Petitioner drove his vehicle to pick up Malano, who was carrying a black ukulele case. There was no evidence that Petitioner knew what was in the ukulele case when Malano entered the vehicle. Subsequently, Petitioner picked up Malia Saunders and Wendy Gonsalves, and drove toward Kaupo, Maui. On the way, Petitioner stopped the vehicle. Malano then exited the car, removed a rifle from the ukulele case, and shot several rounds at an abandoned boat. Malano reentered the vehicle and Petitioner drove toward "town" in the Ulupalakua direction. At some point, Gonsalves was loading the gun while Malano was loading its clip. There was no evidence that Petitioner touched the rifle or the ammunition or that he encouraged its use. There was also no evidence that the rifle or ammunition were freely accessible to Petitioner, since it appears the rifle and ammunition were either in the ukulele case or in the hands of Malano and Gonsalves until Petitioner's vehicle was stopped and he and the others were arrested by officers from the Department of Land and Natural Resources.

From the foregoing, it cannot be inferred that Petitioner "knowingly procured or received[,]" HRS § 702–202, the firearm and ammunition. Consequently, Petitioner would be liable for the voluntary act of possession only if he was in "control of [the gun and ammunition] for a sufficient period to have been able to terminate [his] possession." *Id.* "Control" is defined as "[t]o exercise re-

---

**2.** In HRS § 134–7(b), "possess" seems to encompass "actual" possession, while "control" would appear to encompass constructive possession. *See* n.3, *infra.*

**3.** Under case law, actual possession occurs when "[a] person who knowingly has direct physical control over a thing at a given time is then in actual possession of it[;]" while "[a] person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion over a thing, either directly or through another person or persons, is then in constructive possession of it." *State v. Jenkins*, 93 Hawai'i 87, 110, 997 P.2d 13, 36 (2000) (citation omitted).

straining or directing influence over[,]" or, similarly, as "to exercise restraining or directing influence over something." *Moniz*, 92 Hawai'i at 481, 992 P.2d at 750 (Acoba, J., concurring) (quoting *Black's Law Dictionary* 329 (6th ed.1990); *Webster's Third New International Dictionary* 496 (1981)).

The majority and the ICA assume that a reasonable jury could conclude that Petitioner had the power or authority to exercise dominion and control over the rifle and ammunition based on Petitioner's knowledge of and proximity to the items in the vehicle, and on his control over the vehicle. Majority opinion at 29, 282 P.3d at 571; *State v. Foster*, No. 29799, 2011 WL 4953400, at *2 (App. Oct. 18, 2011) (SDO). However, the facts establish that only Malano and Gonsalves had dominion and control of the rifle and ammunition, and that Petitioner was aware of their possession of the items. There is no indication in the evidence that Petitioner "exercise[d] restraining or directing influence" over the rifle and ammunition themselves. *Moniz*, 92 Hawai'i at 481, 992 P.2d at 750 (Acoba, J., concurring).

It was Malano who apparently brought the rifle and ammunition into Petitioner's vehicle contained in the ukulele case. It was Malano and Gonsalves who loaded the rifle, and Malano who took several shots. The rifle and ammunition thus remained within Malano's, and possibly Gonsalves's, dominion and control, not Petitioner's, up to the stop by the officers. In fact, there was no evidence whatsoever that Petitioner ever touched, handled, or interacted with the rifle or ammunition.

In this jurisdiction, it is well-established that mere presence or mere association with a person in control of prohibited items is insufficient to establish "possession." *See State v. Hironaka*, 99 Hawai'i 198, 206, 53 P.3d 806, 814 (2002) (concluding that "mere proximity to the [item], mere presence, *or mere association with the person who does control the [item] is insufficient to support a finding of possession.*") (citation omitted) (emphasis added); *State v. Yabusaki*, 58 Haw. 404, 408, 570 P.2d 844, 846 (1977) (holding that mere presence is insufficient to establish criminal intent). The evidence in this case established only that Petitioner was associated with a person who was in control of prohibited items, but fails to substantiate that Petitioner himself exercised dominion and control over the contraband. Under the circumstances, a reasonable mind could not fairly conclude beyond a reasonable doubt that Petitioner possessed the rifle and ammunition. *See Timoteo*, 87 Hawai'i at 112–13, 952 P.2d at 869–70.

Respectfully, the ICA's position exceeded the scope of HRS § 702–202. It maintained that "[a]s the driver and owner of the [vehicle], [Petitioner] had ultimate control over who and what was allowed inside the vehicle as well as the activities occurring inside the [vehicle,]" and Petitioner could have "refused to let Malano back into [his vehicle] with the rifle and ammunition." *Foster*, 2011 WL 4953400, at *2. But Petitioner's control over the vehicle and his purported ability to exclude Malano from the vehicle do not constitute possession of the prohibited items.

To decide that Petitioner could end possession by excluding Malano from the vehicle assumes what is at issue. Preventing Malano from reentering the car would only terminate possession if Petitioner in fact "exercise[d] restraining or directing influence," *Moniz*, 92 Hawai'i at 481, 992 P.2d at 750 (Acoba, J., concurring), over the rifle and ammunition in the first place. In other words, one would have to assume that Petitioner had possession to begin with in order to conclude that Petitioner could end his possession of the items by excluding Malano from the vehicle.

Possession stems from dominion and control over the contraband. Dominion and control over the vehicle was irrelevant because control of the vehicle did not rationally mean that Petitioner would rid himself of the rifle and ammunition unless his control of those items was first established. Absent evidence of such control, the question of whether Petitioner would "have been able to terminate [his] possession," HRS § 702–202, was simply not pertinent. Holding that Petitioner possessed the rifle and ammunition because he allowed Malano into his vehicle would expand the scope of what constitutes possession beyond the definition inhering in HRS

§ 702–202. *Cf. Moniz,* 92 Hawai'i at 481, 992 P.2d at 750 (Acoba, J., concurring) (to infer from marriage status that wife had control over drugs procured by husband lacks a rational basis and is akin to guilt by association).

Thus, in *United States v. Wright,* 24 F.3d 732, 735 (5th Cir.1994), the Fifth Circuit Court of Appeals considered whether a defendant who was driving with a passenger had constructive possession, defined as ownership, dominion, or control over contraband, over a gun discovered by the police locked in the glove box of the weapon. That court concluded that there was not enough evidence of control and dominion over the gun where the evidence established that the passenger exercised complete dominion over the gun. *Id.* In particular, that court stated, "dominion over the vehicle ... alone cannot establish constructive possession of a weapon found in the vehicle, *particularly in the face of evidence that strongly suggests that somebody else exercised dominion and control over the weapon.*" *Id.* (emphasis added). In this case, the evidence establishes that only Malano and Gonsalves had control and dominion over the rifle and ammunition.

The only way Petitioner could be presumed to have had possession is if Petitioner had been involved in a conspiracy with Malano regarding the contraband or if Petitioner and Malano were found to have had joint possession of the contraband. *Cf. State v. Brown,* 97 Hawai'i 323, 337, 37 P.3d 572, 586 (App.2001) ("Hawai'i recognizes that two or more persons can be in joint possession of an item. Where two co-conspirators are engaged in a joint criminal activity, possession by one of the tools to further the criminal activity will be imputed to the other.") (internal citation omitted). However, Petitioner was not charged with a conspiracy. Nor was there any evidence that Petitioner acted in concert with Malano in the joint possession or use of the firearm and ammunition. Here, the evidence only establishes that Petitioner was associated with Malano and Gonsalves, and mere association with these persons did not establish that Petitioner exercised dominion and control over the items. *See Parker v. Renico,* 450 F.Supp.2d 727, 733 (E.D.Mich.

2006) ("Although a defendant can jointly possess a firearm with another, more than mere association must be established to show joint possession of contraband ....") (citing *United States v. Newsom,* 452 F.3d 593, 609 (6th Cir.2006) ("[T]he defendant's mere presence in a car where a gun is found and proximity to a gun are insufficient proof of constructive possession.")).

This case is similar to *Moniz,* 92 Hawai'i at 472, 992 P.2d at 741. In that case, marijuana was found in a drawer of a bedroom dresser shared by the defendant and her husband, and the defendant was convicted of possessing the marijuana. *Id.* at 474–75, 992 P.2d at 743–44. Although there was evidence that the defendant saw the marijuana in the drawer, there was no evidence that she procured, received, or otherwise interacted with the marijuana. *Id.* There was also no evidence that the defendant exercised control over the marijuana. *Id.* at 481, 992 P.2d at 750 (Acoba, J., concurring). The evidence only established the defendant's awareness of the prohibited substance in the shared drawer, and thus, under those circumstances, concluding that the defendant was in control of the marijuana was improper. *Id.* As explained above, awareness of contraband is not enough to establish possession. Likewise, under the facts of this case, a person exercising his or her reason could not fairly conclude beyond a reasonable doubt that Petitioner was in possession of the rifle and ammunition.

Since the evidence in this case does not establish that Petitioner exercised restraining or directing influence over the rifle and ammunition, it cannot be established that Petitioner had control over those items, and hence possessed them pursuant to HRS § 702–202. Accordingly, I disagree that a reasonable mind could infer from Petitioner's knowledge of and proximity to the rifle and ammunition that Petitioner had the power to exercise dominion and control over the items. I would affirm the judgment of acquittal on the ground that there was insufficient evidence of the "act" of possession under HRS § 702–202.